WILLIAM WIESE, Respondent, *v.* CORN EXCHANGE BANK TRUST COMPANY, Appellant, Impleaded with SAMUEL GOLDSTEIN, Defendant.

First Department, February 23, 1934.

*Frank C. Laughlin* of counsel [*Spotswood D. Bowers, Albert Falck* and *Joseph W. Kirkpatrick* with him on the brief; *Laughlin, Gerard Bowers & Halpin,* attorneys], for the appellant.

*R. Keith Kane* of counsel [*Edward Abbe Niles* and *J. Collier Weeks* with him on the brief; *Cadwalader, Wickersham & Taft,* attorneys], for the respondent.

GLENNON, J.   This is an appeal by the defendant bank from a judgment of the Supreme Court, entered against it after a trial by a court and jury.   The action sounds in conversion.

It appears from the record that on January 18, 1928, five $1,000 par value, consolidated mortgage series A six per cent bonds of the Anaconda Copper Company, due 1953, and five $1,000 par value, seven per cent German external loan bonds, due 1949, were stolen from a safe in plaintiff's office.

On February 21, 1928, one Samuel Goldstein, the impleaded defendant, obtained a loan from the appellant in the sum of $8,500 and gave as collateral security the stolen bonds which are the subject-matter of this action.   Where Goldstein obtained the stolen bonds is not indicated, since he defaulted  in pleading and did not appear upon the trial of this case.   It was stipulated on the trial that these bonds were negotiable in form.

The respondent in order to have obtained a valid judgment should have established upon the trial of this case that the appellant in accepting the stolen negotiable bonds acted in bad faith or had actual knowledge that the securities were not the property of the impleaded defendant.   A review of the facts will indicate our reasons for believing that respondent failed to sustain his cause of action.

The evidence shows that Goldstein opened an account in the appellant bank in the month of June, 1925.   At that time appellant was informed in a confidential letter by the vice-president of a bank in Hoboken, N. J., that Goldstein had an account with it since December, 1920, and that he would make a " very desirable depositor."   Goldstein's account was first carried in the Washington Heights Branch of the bank, and later transferred to the One Hundred and Eighty-first Street Branch, where one Robert H. Tubbs was manager.   There his average daily balance was about $200.

On January 17, 1928, the manager of the One Hundred and Eighty-first Street Branch of appellant's bank made a loan to Goldstein of $3,200 secured by two $1,000 United States of Brazil six per cent, 1957, bonds, and two $1,000 German externals seven per cent, 1949.   It will be noted in passing that the latter are of the same denomination and description, with the exception of the serial numbers, as those which were stolen from plaintiff on the following day.   On January 19, 1928, a further loan of $4,000 was made to Goldstein, who gave as security a $1,000 Great Northern four and one-half per cent, 1976, bond, a $1,000 Argentine National six per cent, 1960, bond, and three $1,000 Czechoslovakian State eight per cent, 1951, bonds.   The proceeds of these loans were credited to the depositor's account and subsequently

checked out by him. It might be well to remark here that the explanation made by Goldstein for his need of cash was that he was building a warehouse in Connecticut.

On February 21, 1928, a third loan in the sum of $8,500 was made by the defendant to Goldstein, as security for which he pledged on that day the bonds in suit. The first knowledge that Mr. Tubbs, the manager, had that the bonds delivered to the bank on February twenty-first were stolen, was acquired about a year after the third loan was made.

Respondent seeks to support his claim for recovery against the bank on the theory that it had notice of the theft of these particular securities. About February sixteenth or seventeenth, prior to the time that the third loan was negotiated, a detective agency mailed out a circular which is headed in bold type " $2,500 Reward." In the body thereof is a description of the bonds and certain stocks which were stolen from William Wiese & Co., Inc., some time during the night of January eighteenth. While five branches out of seventy of the bank admittedly received this circular, it so happened that it did not come into the hands of the manager of the One Hundred and Eighty-first Street Branch or to the main office of the bank. No duty rested on the men in charge of the other branches to notify Mr. Tubbs or the main headquarters of the bank of the opportunity to obtain a reward as outlined in the circular for locating the stolen securities.

If Mr. Tubbs, the manager, knew that the bonds which were delivered to him were stolen, of course there could be no question as to plaintiff's right to recover, but the difficulty is that he did not know. Nor is there anything in the record to indicate that he, while acting for the bank in making the loan on the negotiable bonds, did so in bad faith. He had no reason at that time to question the honesty of his depositor.

It would indeed be a harsh rule of law to hold a bank responsible upon the statement of facts outlined in this record. The bank here was a holder in due course of the securities which came into its possession on February twenty-first. Section 91 of the Negotiable Instruments Law describes a holder in due course as follows:

" What constitutes a holder in due course. A holder in due course is a holder who has taken the instrument under the following condition:

\*          \*          \*          \*          \*          \*          \*

" 3. That he took it in good faith and for value; ·

" 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

In *Welch* v. *Sage* (47 N. Y. 143) Judge PECKHAM said in part: " The law may be regarded as settled, that a purchaser, for value advanced, of negotiable paper, including bonds, is not bound to exercise such care and caution as wary, prudent men would exercise. Negligence will not impair his title. It is a question simply of good faith in the purchaser. Unless the evidence makes out a case upon which a jury would be authorized to find fraud or bad faith in the purchaser, it is the duty of the court to direct a verdict. [*Belmont Branch Bank* v. *Hoge*, 35 N. Y. 67; *Birdsall* v. *Russell*, 29 id. 249; *Goodman* v. *Simonds*, 20 How. [U. S.] 365; *Murray* v. *Lardner*, 2 Wall. 121; *Goodman* v. *Harvey*, 4 Ad. & El. 870.]"

Again, in *Cheever* v. *Pittsburgh, Shenango & Lake Erie R. R. Co.* (150 N. Y. 59), Judge O'BRIEN said (at p. 65): " There is not much difficulty in stating the rule of law defining the duties and obligations of a party to whom negotiable paper is presented for discount or sale before due. He is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's rights cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide*, his title, according to settled doctrine, will prevail. [*Magee* v. *Badger*, 34 N. Y. 249; *Am. Ex. Nat. Bank* v. *N. Y. Belting, etc., Co.*, 148 N. Y. 705; *Knox* v. *Eden Musee Co.*, 148 N. Y. 454; *Canajoharie Nat. Bank* v. *Diefendorf*, 123 N. Y. 202; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Jarvis* v. *Manhattan Beach Co.*, 148 N. Y. 652.]"

For the reasons assigned herein, we believe the judgment, so far as appealed from, should be reversed, with costs, and the complaint dismissed, with costs.

FINCH, P. J., MERRELL, TOWNLEY and UNTERMYER, JJ., concur.

Judgment, so far as appealed from reversed, with costs, and complaint dismissed, with costs.