[Civ. No. 19869.   Second Dist., Div. Two.   Feb. 19, 1954.]

SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Respondent, v. ELLIS R. TAYLOR et al., Appellants.

John W. Preston and Millsap & Schaumer for Appellants.

Chester E. Cleveland for Respondent.

MOORE, P. J.—Respondent sued to quiet title in itself to two motor vehicles.  The judgment declaring respondent to be the legal owner and enjoining appellants from requesting the issuance of certificates of ownership in the name of Ellis R. Taylor or his corporation or of any other person, firm or corporation is here under attack.  The subjects of the action are a sedan and a coupé.

Respondent has its principal office in the city of Los Angeles and numerous branches throughout the county of Los Angeles and the state.  The Taylor Manufacturing Company, an Illinois corporation, is referred to herein as ''Taylor Com-

pany." Its president is Ellis R. Taylor who resides in Los Angeles. "Car Leasing of America, Inc.," herein referred to as "C.L.A." or trustee, while not a party to the action, was at the time of the events narrated herein engaged in buying and selling used automobiles on a lot on West Pico Boulevard in Los Angeles. The events that gave birth to the controversy arose out of the respective transactions of respondent and Taylor Company with C.L.A. For the sake of clarity, it is to be observed at the outset that the facts involved in this discussion relate primarily to "The Uniform Trust Receipts Law," a legislative enactment of 1935 as sections 3012 to 3016.16 of the Civil Code.

On October 11, 1951, Taylor Company as entruster and C.L.A. as trustee executed an agreement in writing whereby the entruster was to supply funds for procuring motor vehicles to be floored on the premises of C.L.A. to be sold at retail, the interest of the entruster to be secured by trust receipts of the trustee. Such arrangement is referred to as "flooring automobiles for sale." Seven days later they filed with the Secretary of State a "statement of Trust Receipt Financing" as provided by section 3016.3.* Coeval with such filing, Taylor Company by its president opened a commercial account in the sum of $25,000 with respondent's branch office on Pico Boulevard at Alvarado Street. According to his testimony, in his conversations with the manager and assistant manager of that branch, President Taylor made certain statements with respect to trust receipt financing and his company, but Mr. Wyneken, assistant manager of the Pico Branch, testified that Taylor merely said that his company "was going to carry on some business with C.L.A. in connection with financing," and that nothing was said about an actual agreement between Taylor Company and C.L.A.

---

*Civil Code, section 3016.3. "(1) (a) If the entruster within the period of thirty days specified in subdivision one of section 3016.4 files as in this title provided, such filing shall be effective to preserve his security interest in documents or goods against all persons, save as otherwise provided by sections 3016.4, 3016.5, 3016.6, 3016.7, 3016.10, and 3016.11 of this chapter.

"(b) Filing after the lapse of the said period shall be valid; but in such event, save as provided in paragraph (b) of subdivision two of section 3016.5, the entruster's security interest shall be deemed to be created by the trustee as of the time of such filing, without relation back, as against all persons not having notice of such interest.

"(2) The taking of possession by the entruster shall, so long as such possession is retained, have the effect of filing, in the case of goods or documents; and of notice of the entruster's security interest to all persons in the case of instruments."

Mr. Wyneken testified that he told Mr. Taylor that he was familiar with the operation of what they call trust receipts or flooring cars, but he further testified that he knew of no such arrangement between Taylor Company and C.L.A.,; that he had never been employed at respondent's Vermont Branch; had no part in the negotiations for a loan to buy the sedan; and had never previously seen the conditional sale contract. This testimony is the sum total of the proof of "actual notice" to respondent of the contract between C.L.A. and Taylor Company. No positive mention was made to Wyneken that Taylor Company had filed the statement with the Secretary of State.

### THE SALES OF THE TWO AUTOMOBILES

The pertinent facts concerning the manner of the sales of the sedan and the coupé are substantially identical. The buyers were total strangers to each other. They purchased from C.L.A. at different times. Both used the same method of financing. Each was a patron of a different branch bank of respondent. Chronologically, the sedan was sold first.

C.L.A. had the 1950 sedan on its floor. Taylor Company held an interest under the flooring agreement. About October 25 along came customers, Mr. and Mrs. Mizrahi, who immediately determined to acquire the car. They engaged the All State Insurance Company as agent to arrange for a loan with which to make the purchase. It applied to the branch of respondent at 85th Street and Vermont Avenue. After an investigation as to the responsibility of the Mizrahi family, that branch agreed to extend them credit to the extent of $1,251. Such sum, added to other assets of the customers, would pay the $1,879.52 price to C.L.A. The sale was handled by Mr. Dawson on behalf of C.L.A. The court found that neither of the buyers nor respondent had any knowledge of the trust receipt now relied upon by Taylor Company. It may serve to keep clear the evidence of notice by observing at this point that the branch on 85th Street is about 6 miles from the Pico Branch where Taylor Company had its account; that Mr. Weigel, manager of the loan department at the 85th Street Branch, testified that all his negotiations and the final agreement to make the loan to Mizrahi were with an agent of the All State Insurance Company acting for Mizrahi; that he had no contact with C.L.A. and the latter had no financing agreement with respondent at any branch. In consummating the purchase, Mizrahi delivered to C.L.A. his old car at $578.51; paid cash $50; delivered the draft

drawn on the Vermont Branch for $1,251 and executed a conditional sale contract which Mr. Weigel had prepared. After Mizrahi and C.L.A. had executed the conditional sale contract, he delivered the draft and the contract to C.L.A. Thereupon, the latter forwarded to the branch at 85th and Vermont (1) the conditional sale contract duly assigned to respondent; (2) its warranty of the sedan's title in C.L.A.; (3) a dealer's certificate of report of sale; (4) an application for the car's registration showing Mizrahi as registered owner and respondent as legal owner; (5) the purchase draft with request for payment. The warranty of C.L.A. declared itself to be the owner of the sedan, subject only to the rights of the purchaser (Mizrahi) under the contract then about to be assigned and delivered by C.L.A. to respondent.

On receipt of the papers, the Vermont Branch issued its check for $1,251 payable to C.L.A. which promptly cashed it. Aside from the last mentioned transaction and exchange of documents and payment of the draft, the Vermont Branch had no prior or concurrent dealings with C.L.A.; no experience with or knowledge of the Taylor Company; no knowledge of the latter's dealings with C.L.A. There is an utter lack of proof (1) that the transaction of Mizrahi and the Vermont Branch of respondent was not in good faith, or (2) that either Mr. or Mrs. Mizrahi had actual knowledge of a prior encumbrance on the sedan adverse to the title warranted by C.L.A.

Referring to the "trust receipt" and its function with regard to the sedan sale, it is dated November 1, 1951, exactly 21 days after Taylor Company made its flooring agreement with C.L.A., 14 days after the agreement had been filed with the Secretary of State, and *seven days after* Mizrahi had made his purchase of the sedan. On the latter date, the ownership certificate on the vehicle was not in the name, or possession of C.L.A. or of Taylor Company. That certificate was then at the Seventh and Grand Branch of respondent as *security for a debt of Transportation Lease Company* which had sold the sedan to C.L.A.

As further proof of the disassociation of the sale to Mizrahi from the trust receipt, on October 21, 1951, C.L.A. executed a draft on Taylor Company at the Alvarado Branch of respondent payable to Transportation Lease Company for $1,275 for the sedan in question. It was endorsed by the payee and forwarded to the Seventh and Grand Branch with directions to sign the name of such payee to the certificate of

ownership of the sedan. The draft was received at the Seventh and Grand office on October 26, 1951, and it was by that branch, as attorney in fact for Transportation Lease Company, promptly so signed and was also signed by the bank as legal owner. The signature of respondent was affixed "without warranty" which was a release of any debt that might be due the bank by the Transportation Lease Company. In other words, neither condition nor title of the automobile was warranted.

The purchase of the coupé for $1,978 was consummated in a manner similar to that of the sedan's purchase. It was effected by means of a loan to Mr. and Mrs. Knaggs by respondent's branch on Ventura Boulevard, about 8 miles west of the C.L.A. premises. After the latter had signed the conditional sale contract and delivered the coupé to its customers, it promised the Knaggs to cause the transfer of registration showing them to be the registered owners and respondent the legal owner. At the same time, it returned to the Ventura Boulevard Branch the conditional sale agreement properly assigned to respondent accompanied by a warranty of title, dealer's certificate of report of sale, and an application for registration showing Mr. and Mrs. Knaggs as purchasers and respondent as legal owner. The warranty forwarded to the Ventura Boulevard Branch declared C.L.A. to be the owner subject only to the rights of the new purchasers. The latter branch had never dealt with C.L.A.; had no knowledge of Taylor Company. There is neither proof nor suspicion that the loan transaction of the Ventura Boulevard Branch with Mr. and Mrs. Knaggs was otherwise than sincere and honest. Neither had any actual knowledge of a claim of lien by Taylor Company.

Appellants contend that their right to the legal title of the cars must prevail because their security interest was protected by trust receipts that existed prior to respondent's acquisition of the conditional sale contracts. It is true that a "trust receipt transaction" is legal and valid and protects the interest of the entruster in many situations. However, the Uniform Trust Receipts Law, Civil Code, section 3016.5, subdivision (2)(a)(i),* provides that where the trustee under

*Civil Code, section 3016.5.

(2) Where a purchaser from the trustee is not protected under subdivision one hereof, the following rules shall govern:

(a) Sales by trustee in the ordinary course of trade.

(i) Where the trustee, under the trust receipt transaction, has liberty of sale and sells to a buyer in the ordinary course of trade, whether before

the trust receipt transaction has liberty of sale and sells to a buyer in the ordinary course of trade, *such buyer takes free of the entruster's security interest* in the goods so purchased and no filing shall constitute notice of the entruster's security interest to such a buyer. Such provision emphasizes that a purchaser in due course of trade is under no duty to consult the records of the Secretary of State.

Although it is admitted that Mr. and Mrs. Mizrahi were buyers in the ordinary course of trade, appellants contend that the bank is not in the position of such a buyer, but is rather the purchaser of a conditional sale contract after the goods have been sold. In support of this they argue that there was no loan from the bank to Mizrahi since there is no note or other evidence of such debt, and that the bank did not enter the automobile purchase transaction until it acquired the conditional sale contract as assignee. The evidence and findings do not support appellant's position.

Before the sale was consummated, a loan from the bank was applied for, the credit standing of the prospective purchasers was checked, the bank made a commitment to the purchasers for the amount desired and an automobile purchase draft for this amount was issued to the purchasers. Instead of taking the promissory note of the purchasers at that time, the bank utilized the conditional sale contract and made assignment of same to itself a condition of payment of the draft. C.L.A. never envisioned itself as the party carrying the financing transaction and there is no indication that it would have sold the car without the prior commitment by the bank to the purchasers. The contract was, itself, evidence of the purchaser's debt to the bank. Such a transaction does not prevent respondent from being in the position of a purchaser in the ordinary course of business. (*Commercial Credit Co.* v. *Barney Motor Co.*, 10 Cal.2d 718, 719, 721 [76 P.2d 1181] ; *Bank of America* v. *National Funding Corp.*, 45 Cal.App.2d 320, 322, 330, 333 [114 P.2d 49].) In *Bank of America* v. *National Funding Corp., supra,* the purchase transaction was identical with those involved in the instant action. There, a Mr. Knights examined a coupé in the salesroom of the merchant and was pleased with the car,

or after the expiration of the thirty-day period specified in subdivision one of section 3016.4 of this chapter, and whether or not filing has taken place, such buyer takes free of the entruster's security interest in the goods so sold, and no filing shall constitute notice of the entruster's security interest to such a buyer.

but was in need of financial aid to consummate his purchase. He requested the Bank of America to arrange a loan of $754.21. The bank approved his application and the money was advanced in the following manner: A conditional sale contract was drawn and executed wherein Knights was named as purchaser and the merchant as seller. It described the coupé and recited the usual provision of reservation of title in the seller until payment is made. The merchant then executed an assignment of the contract to the bank, coupled with a warranty of title. The contract, assignment and warranty were delivered to the bank which thereupon issued its sight draft for $754.21 and on December 23, 1936, the money was paid to the merchant. When six weeks passed without receipt of his license and registration slip as promised by the seller, Mr. Knights investigated and learned that the seller had gone out of business. It was determined that the automobile had been in the possession of the merchant pursuant to a flooring agreement and that defendant, National Funding Corporation, was the entruster, holding a trust receipt executed by the vendor-merchant. The judgment awarding legal title of the coupé to plaintiff bank was based on two independent grounds. It is true that not all the facts which were held to estop National Funding Corporation from asserting title against the Bank of America are present in the case at bar; however, the court stated, "In addition to what we have said with reference to estoppel, we have reached the conclusion that the provisions of the Uniform Trust Receipts Law are decisive of the questions presented on this appeal and require an affirmance of the judgment . . . the coupe was sold in the ordinary course of trade to a buyer acting in good faith and without notice of the lien of the National Funding Corporation. As the purchase price was paid in full it follows that the buyer took 'free of the entruster's interest in the goods so sold.'" In the instant action, the total purchase price was paid in full to the trustee, C.L.A. Hence, the buyers took title free of the entruster's interest.

Appellants present the argument that respondent had actual notice of the flooring arrangement between the Taylor Company and C.L.A. and therefore the company's prior interest in the automobiles must prevail. This contention that respondent had actual notice of the Taylor-C.L.A. flooring contract is based on the facts (1) that the manager and assistant manager of the branch wherein both the Taylor

Company and C.L.A. had their accounts, were told by Mr. Taylor that such an arrangement existed, and (2) the imputation of such knowledge to the loan officers of the other two branches at which the loans were transacted. Such contention is contrary to law. While the Civil Code (§ 2332) provides that as "against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other," yet it cannot be said that the incidental knowledge of the manager of one branch of a bank that a new depositor is planning to engage in trust receipt financing with a used automobile dealer ought, in good faith and in the exercise of ordinary care and diligence, to be communicated to the loan officers of all other branches of the bank. It would be an unreasonable burden on trade and commerce to require a bank and each of its branches in a sprawling empire of banks to know the innumerable facts daily communicated to each branch by its numerous patrons. In *Hansen* v. *Bank of America,* 101 Cal. App.2d 300, 303 [225 P.2d 665], the court did not impute the knowledge of one clerk as to the purpose of a depositor's check to another clerk in the same branch dealing with the same check later in the same day. In *Wiese* v. *Corn Exchange Bank Trust Co.,* 240 App.Div. 198 [269 N.Y.S. 740, 742], written notice to five branches of defendant bank was held not to be notice to the manager of a sixth branch in the same city that certain bonds which he had accepted as security for a loan had been stolen.

In *Commercial Credit Co.* v. *Barney Motor Co.,* 10 Cal.2d 718 [76 P.2d 1181], the sale of an automobile was involved in circumstances not unlike those of the case at bar. It was contended that the lender bank had notice of the prior interest of the entruster by reason of the facts that the bank was familiar with trust receipt financing and that the dealer had previously indicated to the bank that he planned to floor automobiles with some financier and had inquired whether the bank were interested in participating. The court rejected this argument and held that this information was not sufficient to put the bank on inquiry as to the title of the automobile in question. (*Ibid.* at 721.)

In support of their contention that respondent did not acquire title to the sedan and the coupé free of Taylor Company's security interest by its purchase of the conditional

sale contracts on the two cars, appellants cite *General Motors Accept. Corp.* v. *Associates Discount Corp.*, 38 N.Y.S.2d 972. G.M.A.C. floored cars with Mr. New, a new and used car dealer, and the latter sold many of his conditional sale contracts to Associates Discount Corporation who furnished the blank contract forms for Mr. New's use. In making such sales, there were no arrangements between the buyers and Associates Discount Corporation prior to the purchases of the cars. There was actual notice to Associates Discount Corporation of the trust receipt financing of New by G.M.A.C. Such notice resulted from the facts (1) that the office manager of A.D.C. and his assistant who purchased the conditional sale contract were also engaged in trust receipt financing with Mr. New; and (2) that they and G.M.A.C. kept each other informed as to the serial numbers of cars on which each held trust receipts. Not to be overlooked is the fact that this municipal court judgment was reversed on the ground of election of remedies and the trust receipt priority issue was not considered on the appeal. It is thus seen that the G.M.A.C. case holds merely to the general law: The holder of such a contract of conditional sale which is not negotiable is an assignee thereof who stands in the shoes of the assignor; he takes only such rights as the assignor had and is subject to the same defenses as he. There is nothing in the cited case bearing specifically upon the issues at bar.

Appellant relies upon *C.I.T. Corp.* v. *Commercial Bank*, 64 Cal.App.2d 722 [149 P.2d 439], and *National Funding Corp.* v. *Stump*, 57 Cal.App.2d 29 [133 P.2d 855]. Neither is applicable to the present action. In the C.I.T. Corporation case, the contest was between two parties who claimed to be entitled to the protection afforded entrusters under the Uniform Trust Receipts Law. C.I.T. had sold cars to the dealer and held his trust receipts for security. The bank had advanced money to the dealer on the same cars while on the sales floor, taking an instrument which the court construed as a trust receipt. There was never a sale to a buyer in the ordinary course of trade. In the National Funding Corporation case, the plaintiff had loaned money to the dealer and taken a chattel mortgage on the automobile in question as security. The defendant's prior interest in the vehicle was secured by a trust receipt. The court held that plaintiff was negligent in not discovering the prior interest in that it relied upon an invoice which on its face showed that the dealer was not the owner, and, that the dealer made out

the usual dealer's report of sale from himself as dealer to himself as an individual in the presence of the plaintiff. Here, also, there was no sale in the ordinary course of trade.

Appellants assert that findings XI and XXII fail to support the judgment. Not only do they misread these findings, but they ignore findings IV, V, VI, VII, IX, XV, XVI, XVII, XVIII and XX, which also support the judgment. By the latter findings it was determined that by virtue of the loan, the preparation and execution of the conditional sale contract, the delivery of the automobile purchase draft, the assignment of such contract to respondent, and the warranty of a clear title by C.L.A., respondent's ownership was established. If the officers of C.L.A. could not remember Taylor Company's claim to a lien on the automobiles in question while issuing its warranty of title, how could the scattered officers of respondent's branches have knowledge of conversations of its branch managers with patrons concerning the deposits of the latter and their plans for business?

Appellants present additional arguments in their briefs, including one that some 20 findings "are not supported by any competent sufficient evidence and are insufficient to support the judgment herein." Underlying all these assignments of error is their divergent view of the status of the bank as a buyer in the ordinary course of trade without actual knowledge of a prior interest held by appellants. Since the status of respondent has been determined, these arguments are no longer pertinent.

The judgment is affirmed.

McComb, J., and Fox, J., concurred.

A petition for a rehearing was denied March 15, 1954, and appellants' petition for a hearing by the Supreme Court was denied April 14, 1954.