415 P.2d 97

Thomas J. LAWLESS, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE CO., a corporation, Appellee.

No. 7778.

Supreme Court of Arizona.

In Banc.

June 10, 1966.

James L. DeSouza, Phoenix, for appellant.

Shimmel, Hill, Kleindienst & Bishop, by Richard E. Norling, Phoenix, for appellee.

UDALL, Justice.

This is an action in which the plaintiff, surety, a Minnesota corporation authorized and doing business in the states of Arizona and California, sought to recover from defendant on a subdivision and tract improvement bond, pursuant to which the plaintiff alleged it had to pay the city of Anaheim, California, $5,974.75 as well as attorneys' fees based on the alleged fact that defendant failed and neglected and refused to faithfully perform a contract with the City of Anaheim, California. It was tried before a jury which found in favor of plaintiff in the amount of $7,-567.69.

We are faced in this case with an extremely limited record, that record consisting primarily of the minute entries; narrative statements of evidence pursuant to Rule 75(c) of the Arizona Rules of Civil Procedure, 16 A.R.S.; a small portion of the reporter's transcript consisting of parts of the cross-examination of the witness Dillavou; certain exhibits; and the pleadings. We have held that in reviewing the proceedings below this Court does not look beyond the record on appeal. Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963); State Automobile & Casualty Underwriters v. Engler, 90 Ariz. 321, 367 P.2d 665 (1961).

Since the statement of facts set forth in the defendant's brief is acknowledged to be "reasonably accurate" by the plaintiff, as far as it deals with material matters on this appeal, we shall follow it and add pertinent sections of the plaintiff's.

narrative statement of evidence filed pursuant to stipulation and the order of the court below.

During the year 1955 the Calamar Company, a California corporation, was engaged in the development and construction of a residential subdivision at Anaheim, California.

In the course of such development Calamar was required by the City of Anaheim to furnish a subdivision and tract improvement bond and procured the same from plaintiff, a corporate surety acting in such capacity.

In connection therewith plaintiff requested indemnity upon its risk and, in compliance with that request, a written indemnity agreement was prepared by plaintiff upon plaintiff's own printed form which then was presented for signature and signed by defendant Thomas J. Lawless, who then was an officer and stockholder of the Calamar Company. At the same time a similar indemnity agreement prepared in the same manner was presented to and signed by Roger Brant. Later, without the knowledge or permission of defendant, Lawless, Roger Brant the co-indemnitor was released from his indemnity agreement by plaintiff.

On September 30, 1959, plaintiff commenced this action in the Superior Court in Maricopa County, Arizona and on that day filed a purported bond on attachment wherein plaintiff stated itself to be both principal and surety, running to "Thomas J. Lawless and Jane Doe Lawless, husband and wife,". No other bond on attachment or garnishment was filed. Thereafter, affidavits on garnishment and writs of garnishment were issued and served upon various garnishees relating to alleged indebtedness to Thomas J. Lawless and Jane Doe Lawless in the amount of $9,500; indebtedness to Thomas J. Lawless in the amount of $8,015.19 and indebtedness to Texona Construction Co. in the amount of $8,015.19. An amended complaint was filed by plaintiff October 13, 1959 praying judgment against defendants Lawless and their alter ego, defendant Texona in the amount of $8,015.19 with interest, attorneys fees and costs.

Defendants in both complaints were "Thomas J. Lawless and Jane Doe Lawless, husband and wife"; Texona Construction Co., an Arizona corporation; and Phoenix Title and Trust Company, an Arizona corporation.

The amended complaint sought recovery of the total sum of $8,015.19 of which $5,974.75 represented payment to the City of Anaheim in compromised settlement of an action brought by that city against plaintiff for alleged failure of Calamar Company to faithfully perform its "contract" with the city, $1,592.94 represented attorney fees allegedly incurred in connection with that action and compromise settlement and in connection with certain other claims of

creditors against the Calamar Company, and $447.50 represented an alleged unpaid bond premium. Also sought was the recovery of interest and costs and certain declaratory and injunctive relief. Insofar as pertinent to this appeal, answers were filed promptly by defendant Thomas J. Lawless and by defendant Jane Doe Lawless, who, among other things, set forth the defense that she became the wife of defendant Thomas J. Lawless subsequent to the time of the alleged events referred to in the complaint and denied liability on behalf of herself and of the community composed of herself and of defendant Thomas J. Lawless.

On or about May 5, 1961 plaintiff caused a pretrial order to be entered and filed in the action containing, among other things, the following provision:

"4. Each party to this lawsuit shall produce for the inspection of opposing counsel all documentary evidence which is expected to be offered in evidence by either party no less than five (5) days prior to the trial of said cause; otherwise such evidence shall not be introduced in evidence."

At the trial of the action, insofar as related to the issues of this appeal, plaintiff presented testimony of C. C. Dillavou, who served as plaintiff's attorney in handling the claims of creditors of Calamar Company, that plaintiff was served in an action in Orange County, California filed by the City of Anaheim seeking a judgment against the plaintiff for $75,000, the full penal sum of the bond. Through various correspondence and conferences, Mr. Dillavou was able to compromise the action by paying $5,974.75 to the City of Anaheim.

Mr. Dillavou testified that he served as plaintiff's attorney, handling the claims of the creditors of Calamar and in settling the action filed by the City of Anaheim. He further stated that he never visited the subdivision concerning which the City of Anaheim, California asserted a claim against plaintiff as surety for the Calamar Company and he never talked or communicated directly with officers or employees of the City of Anaheim concerning the claim.

However, Dillavou testified that an associate of his did visit the subject premises and that the premises were also inspected by an adjuster for the plaintiff. He made the decision on behalf of plaintiff, as surety, to pay the claim of the City of Anaheim, and stated that his decision was based upon written reports furnished him which indicated the claims of the City were correct and that plaintiff, as surety, was obligated to pay them. He identified the checks given the City of Anaheim by plaintiff in payment of its claims. He identified his office files relating to the matter, plaintiff's Exhibits 6, 7 and 8 in evidence, and stated that they were his complete files, contained all documents he had on the matter, and that no documents or contents had been removed therefrom. The trial court ruled that

only so much of the files as were material and authenticated could be exhibited to the jury.

Dillavou testified that he had attempted to notify Calamar Company as principal on the surety bond and defendant Thomas J. Lawless as indemnitor thereon of the assertion of the claim of the City of Anaheim but had been unable to locate them, and that he did not know the whereabouts of defendant Thomas J. Lawless or the Calamar Company and that mail sent to various addresses for them was returned by the post office marked "unknown," or that addressee was not at that address and had left no forwarding address. He identified several envelopes containing demand letters in evidence as being those to which he referred which were sent to a number of addresses including Box 424, Anaheim, California.

Dillavou also testified that at no time did the city engineer of Anaheim, California, ever accept the work which was the subject of the action filed by the City. The City had accepted other portions of the work, but the work for which the bonding company made the said payments to the City of Anaheim was never completed and was never accepted by the City of Anaheim prior to the time that payments were made by plaintiff.

Defendant Thomas J. Lawless was duly sworn and testified:

That for more than six months after completion of the subject subdivision tract, he was actively and continuously engaged in development of a residential tract on the adjoining land in the City of Anaheim, lived on said adjoining tract, and was in continuous contact with the building officials and inspectors of the City of Anaheim who at all times knew where he was and who never mentioned any claim of defective or incomplete work upon the tract in question.

That when he left California, all creditors of the Calamar Company had been satisfied, and that he remained in California for approximately a year after completion of the subject tract, openly settling said corporation's affairs. That upon leaving California he left his Phoenix forwarding address with the post office at Anaheim to which mail addressed to the corporation's Box 424 at Anaheim could be forwarded, and that for some time he received mail at Phoenix thus forwarded. That on coming to Phoenix he established an office in a back room of the dwelling at 5332 North 18th Street where his secretary, who later became his wife, then lived with her parents. A telephone and office equipment were installed there, it was used openly as his business and mailing address, and that at all times during which plaintiff claims to have been investigating, negotiating, settling and paying the claim of the City of Anaheim, he

could be reached or contacted readily at 5332 North 18th Street, Phoenix.

That he had never received any notice or knowledge of, and knew nothing of any claim asserted by the City of Anaheim until notified of it by plaintiff's Phoenix attorney, long after the asserted claim had been settled and paid by plaintiff. That the claim of the City of Anaheim was completely unfounded, that the work of the Calamar Company covered by plaintiff's bond had been fully and properly completed and accepted by the City of Anaheim with binding effect, and that had plaintiff contacted him and notified him of the assertion of the claim he could and would have informed plaintiff and conclusively proved that the claim of the City of Anaheim was completely unfounded and that no liability upon principal or surety existed; that the claim should not be paid, and that such facts also were readily available upon any reasonable investigation or inspection. That written acceptances by the City of Anaheim of all pertinent work had been furnished to the lending agency which financed the subdivision following which the agency released the final construction financing draw, such final draws never being released until such City acceptances are furnished; that he had and could have furnished inspection reports and acceptances showing satisfactory completion. He testified also that all required trees had been planted, all other required work done, that the drainage structure which the City claimed defective and for which it sought and received reconstruction costs from the plaintiff surety was properly installed, was not even a part of the work covered by the bond to the City, or subject to City control, but was in fact on an easement of the County Flood Control District, subject to the exclusive supervision and control of that district, and was inspected and approved by the Flood Control District. That the half-street which the City of Anaheim claimed incomplete, and for which it sought and received construction costs from plaintiff surety, was in fact situate outside the tract and in no way concerned with the Calamar project in question nor subject to the bond. That all of said facts were readily provable by him and readily discoverable by any reasonable investigation.

At the conclusion of plaintiff's case, directed verdicts were returned in favor of the defendants Jane Doe Lawless, the community composed of Thomas J. Lawless and Jane Doe Lawless, Texona Construction Co. and Phoenix Title and Trust Company, and judgments were entered thereon; the element of alleged unpaid bond premium was removed from the case, no evidence having been presented thereon; a counterclaim of defendant Texona Construction Co. was dismissed as premature; and a motion of defendant Thomas J. Lawless for a directed verdict in his favor was made and denied.

The jury returned its verdict in favor of plaintiff and against defendant Thomas J. Lawless in the amount of $7,567.69, and the court made a further order assessing jury fees in the amount of $480 against the defendant.

A form of written judgment was submitted by plaintiff to which defendant filed timely written objections.

Defendant filed motions for judgment notwithstanding the verdict and for new trial with appropriate memorandum of points and authorities, which motions were based in part upon alleged newly discovered evidence consisting of documents found after trial in the files of attorney Dillavou (Plaintiff's Exhibits 6, 7 and 8 in evidence). Defendant's motions were denied after hearing, a motion for rehearing was denied and the court thereafter made and entered its order for judgment in favor of plaintiff and against defendant in the amount of $7,567.69, which order further exonerated plaintiff's $10,000 attachment bond. The formal written judgment was thereafter signed and filed and defendant Thomas J. Lawless filed timely notice of appeal.

■ Defendant first claims the court erred in denying his motion for new trial based upon the grounds of plaintiff's counsel's misconduct in statements made to the jury. Since there is no transcript of the arguments of counsel in the court below, there is no record upon which this Court can make a determination of this alleged error.

The defendant next claims the court erred in not granting defendant a new trial based on newly discovered evidence, which with reasonable diligence could not have been discovered and produced at trial, pursuant to Arizona Rules of Civil Procedure, Rule 59(a). The records and the evidence in this case would indicate that there is merit in defendant's contention.

The evidence which defendant asserts was newly discovered consists of several letters and written memoranda that were found in the documents contained in Dillavou's files which were introduced into the case the second day of the trial.

It is contended by defendant that the statements contained in the letters and documents in Dillavou's file is newly discovered substantive evidence in that:

(1) these documents show that plaintiff had failed, in good faith to investigate and determine the validity of the claims of Anaheim against the defendant, for his alleged failure to fulfill his contract with Anaheim, before paying the claims, and

(2) that due diligence had not been exercised by the plaintiff in endeavoring to notify the defendant of the alleged claims by Anaheim, although they had the defendant's Arizona address long before the claims were settled and paid.

In reference to the first contention by defendant, that plaintiff had not investigated to make a valid determination of the justice of the claims, reference is made to a letter written by the plaintiff company, dated January 30, 1958, addressed to Dillavou & Cox, in which the plaintiff discloses that their agent had interviewed the city engineer for Anaheim, who had the primary responsibility of letting the contract to the defendant. The city engineer avoided direct answers to inquiries that were made by plaintiff's agent, but the agent reported that the city engineer was surprised when advised that a claim was being made against the plaintiff by Anaheim. The city engineer committed himself to the extent of saying that the work was substantially completed, that ninety-five percent or better had been done and that the balance of the work outstanding consisted of small amounts of correctional work, cleanup, and the completion of one-half of one street. Plaintiff's agent also reported the city engineer stated that the defendant could, upon filing proper application, most likely obtain a waiver concerning that portion of the work that referred to the completion of one-half of the street.

Plaintiff's agent further stated, in the letter or report, that he interviewed the city attorney for the City of Anaheim who stated there was no written contract between the city and Calamar Company. He summarized his report, after his interview with the city engineer and city attorney, as follows:

"I made a personal inspection of the tract in question and found from outward appearances that all of the work, with the exception to that previously referred to in connection with Mayflower street, had been completed. There was considerable rubble in the street and apparently no effort had been made toward cleanup. However, the work appeared excellent and it was noted there was no standing water anywhere in the tract although it had just rained two days previously to my visit. As far as the tract itself is concerned, there was no activity whatever in evidence, either in the way of construction or in the way of sales. Although all of the homes appeared to be completed, the whole operation gave the impression of abandonment."

As to defendant's second contention it is asserted that plaintiff, in order to substantiate its claim that good faith had been used in attempting to locate the defendant, introduced five or six letters, dated in January and February of 1958, addressed to the defendant at various addresses in California and Texas, which were never delivered, and these letters with the envelopes stamped "Unknown" were introduced in evidence. As stated previously, Dillavou testified he had attempted to locate defendant, that he did not know his whereabouts and that he could not be found. Without question the

impression given from this testimony would lead the jury to believe that plaintiff, through its attorney, had used good faith in trying to keep the defendant informed of the claims being made by the City of Anaheim.

Whereas, found in Dillavou's files were several letters pertinent to this issue from plaintiff's attorneys, which show they knew exactly where defendant was located and had so informed the plaintiff prior to the settlement of this matter with the City of Anaheim. These letters and memoranda were, in substance, as follows:

(1) In a letter from Dillavou & Cox dated June 5, '58, addressed to the plaintiff, it is stated: "Mr. Holyoke failed to send us the present address of Mr. Lawless, and because of the importance of this item I do not feel that we should forthwith transmit a draft in settlement of this matter until this information has been supplied to us." J. T. M. [James T. Moore]

(2) A letter from Dillavou to plaintiff's Phoenix attorney, dated July 1, 1958, shows that he had knowledge of Mr. Lawless' Phoenix address;

(3) A letter from James T. Moore, of the firm of Dillavou & Cox, to plaintiff, dated June 24, '58, refers to "Mr. Lawless' present address, which is 5332 N. 18th Street, Phoenix, Arizona";

(4) A memo in the file of Dillavou & Cox dated June 11, 1958, shows that "Mr. Lawless' present address is '5332 N. 18th Street, Phoenix, Arizona.'" Signed J. T. M. [James T. Moore].

(5) In a memo dated June 11, '58, re Calamar v. St. Paul: "Mr. Holyoke, city engineer, city of Anaheim, informed me that Mr. Lawless' present address is 5332 N. 18th Street, Phoenix, Arizona." J. T. M. [James T. Moore].

It will be noted defendant testified that the corporation which he managed in Arizona, and to which his mail was forwarded from Anaheim, California, was located at 5332 N. 18th Street in Phoenix, Arizona.

Disregarding the advice given by Moore of the Dillavou firm, that the settlement draft should not be transmitted to Anaheim until the information was supplied regarding the whereabouts of defendant, so that he could be notified of the purported settlement, the plaintiff on June 25, 1958, executed a draft in favor of the city of Anaheim for the sum of $5,690.75, in settlement of any and all claims. Subsequently, plaintiff issued a second draft to Anaheim dated October 6, 1958, for the sum of $209.00. Both of these drafts were not paid until November 3, 1958. Thus the drafts were both executed and paid several months after plaintiff had full knowledge of the address of the defendant in Phoenix, Arizona.

Plaintiff contends, however, that the so-called "new evidence" was available to the defendant after the second day of the trial, when Dillavou's files were introduced in evidence. The plaintiff further contends that even though this evidence had been brought to the attention of the court and the jury it would not have affected the outcome of the case because of its minor importance in the overall status of the case.

In reference to the first point the defendant asserts that it would have been impossible for him to have learned that these letters were contained in the voluminous files of Dillavou during the course of the trial of the case. The defendant further states that the court had made a pretrial order which required that all documents intended to be introduced in evidence should be produced for inspection of the opposite party not less than five days prior to the date of trial. Otherwise such evidence was not admissible in the case. This pretrial order would certainly lead defense counsel to believe that all material documents and letters that were intended to be introduced by plaintiff would have been presented to the court at least five days before the date of the trial. We are inclined to agree with defendant's contention.

In reference to plaintiff's second point, that the introduction of the pertinent letters and documents found in Dillavou's files would not have changed the ultimate results of the trial, we disagree; it may well be that if these pertinent letters and documents pertaining to the case had been presented to the jury the result might have been different. The documents established quite conclusively by the report of plaintiff's agents that the defendant's contract with Anaheim had been virtually completed and filled, which knowledge was partially admitted by the city engineer, and by the city attorney. Furthermore, the failure of plaintiff to notify the defendant of the alleged claim of Anaheim and the settlement of the claims, even though plaintiff had defendant's address and knew where he could be reached, placed defendant at a great disadvantage before the court and jury.

It is stated in 26 Cal.Jur.2d, Indemnity, § 31, p. 372:

"An indemnity contract cannot be enforced against the indemnitor unless the indemnitee performed all of the conditions required on his part. Accordingly, if the indemnitee fails to avail himself of a complete defense which might have avoided the liability or loss on which recovery is sought, his right of action is vitiated." See 50 Am.Jur., Suretyship, § 236, p. 1061.

Paragraph 6 of the indemnity agreement, plaintiff's Exhibit 14 in evidence, provides in pertinent part:

"That liability hereunder shall extend to and include the full amount of any and all money paid by the surety or sureties

executing any such bond or bonds in settlement or compromise of any claims, suits and/or judgments thereunder in good faith under the belief it or they were liable therefor, whether liable or not * * *."

It is apparent that the letters and written memoranda contained in the Dillavou files do not show that the plaintiff company settled with Anaheim, keeping in mind the element of good faith required to be exercised toward the defendant.

Defendant claims that under the terms of the indemnity agreement the plaintiff as surety was required to contact and advise the defendant of the claims being made by the City of Anaheim. This contention would seem to be valid and was so recognized by the plaintiff when it introduced letters which gave the impression in the trial that it had made a bona fide effort to try to contact the defendant to notify him by letter of the claims of Anaheim and of the possibility of a settlement.

We have held that to secure a new trial upon the ground of newly discovered evidence, it must appear that the purported evidence is such as would probably have changed the result should the new trial be granted, and it must also appear that such evidence could not have been discovered before the trial by the exercise of due diligence. Sabin v. Rauch, 75 Ariz. 275, 255 P.2d 206. We believe that both of these conditions have been met by the defendant in this case and that the court abused its discretion in not granting defendant's motion for a new trial.

Since it is our opinion that the lower court abused its discretion in failing to grant defendant a new trial, we do not find it necessary to dispose of the other assignments of error.

The judgment is reversed and the cause remanded for a new trial.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFARLAND, JJ., concur.