837 P.2d 1158

**LYPHOMED, INC., Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Lawrence O. Anderson, a judge thereof, Respondent Judge,**

**James CARTER and Dorothy Carter, husband and wife, Real Parties in Interest.**

**No. 1 CA–SA 91–225.**

Court of Appeals of Arizona, Division 1, Department C.

March 19, 1992.

As Corrected March 23, 1992.

Review Denied Oct. 20, 1992.

Lewis and Roca by Merton E. Marks, Janet Napolitano and Carl F. Mariano, Phoenix, and Neal, Gerber & Eisenberg by Phil C. Neal, Bradley C. Twedt and Peter B. Newton, Chicago, Ill., for petitioner.

Hofmann, Salcito & Stevens by Leroy W. Hofmann, Margaret F. Dean and Daniel R. Salcito, Phoenix, and Hufford, Horstman, McCullough & Mongini, P.C. by Patrice M. Horstman, Flagstaff, for real parties in interest.

## OPINION

KLEINSCHMIDT, Judge.

We accepted jurisdiction of this special action because it involves a question of the interpretation of a relatively new statute abolishing joint and several liability, and of how the rules of civil procedure relating to that statute are to be applied. When we accepted jurisdiction, we granted the relief the petitioner requested and stated that an opinion would follow. This is that opinion. We conclude that *each* defendant who claims that other persons or entities who have not been joined in the action are responsible for the plaintiff's injury must file a notice of nonparty at fault

pursuant to Rule 26(b)(5), Arizona Rules of Civil Procedure. A defendant is not relieved of the need to file such a notice simply because another defendant in the case has done so, even though the latter names all of the nonparties at fault the defendant who has not filed a notice would name. Although the petitioner did not comply with the rule as we construe it, we grant relief because we find that the trial court abused its discretion in finding that the petitioner was equitably estopped to give the notice late.

## FACTS AND PROCEDURAL HISTORY

The case arises out of the death of a woman allegedly caused by an overdose of medication administered to her when she was a patient at Winslow Memorial Hospital. In May of 1990, the woman's survivors sued the hospital and the petitioner, LyphoMed, Inc., the manufacturer of the medication. The basis of the claim against LyphoMed is that it mislabeled the medication.

The statute abolishing joint and several liability, Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–2506 (1987), and Rules 26(b)(5) and 26(e) of the Arizona Rules of Civil Procedure bear on what happened thereafter. The statute provides:

**Joint and several liability abolished: exceptions; apportionment of degrees of fault; definitions**

A. In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be entered against the defendant for that amount. To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant.

B. In assessing percentages of fault the trier of fact shall consider the fault of all persons who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit. Negligence or fault of a nonparty may be considered if the plaintiff entered into a settlement agreement with the nonparty or if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault. Assessments of percentages of fault for nonparties are used only as a vehicle for accurately determining the fault of the named parties. Assessment of fault against nonparties does not subject any nonparty to liability in this or any other action, and it may not be introduced as evidence of liability in any action.

Rule 26(b)(5) of the Arizona Rules of Civil Procedure was adopted to implement the statute. It provides:

(5) *Non–Party at Fault.* Any party who alleges, pursuant to A.R.S. § 12–2506(B) (as amended), that a person or entity not a party to the action was wholly or partially at fault in causing any personal injury, property damage or wrongful death for which damages are sought in the action shall provide the identity, location, and the facts supporting the claimed liability of such nonparty at the time of compliance with the requirements of Rule V(a) of the Uniform Rules of Practice of the Superior Court, if applicable, or within one hundred fifty (150) days after the filing of that party's answer, whichever is earlier. The trier of fact shall not be permitted to allocate or apportion any percentage of fault to any nonparty whose identity is not disclosed in accordance with the requirements of this subpart 5 except upon written agreement of the parties or upon motion establishing newly discovered evidence of such nonparty's liability which could not have been discovered within

the time periods for compliance with the requirements of this subpart 5.[1]

LyphoMed, through its original attorneys, filed an answer, and then an amended answer, which asserted an affirmative defense alleging that "each of the other parties" named in the action was negligent. It asked that if there were a finding in favor of the plaintiff, that fault be apportioned among "all the parties." Its co-defendant, the hospital, filed an answer and later filed a timely notice pursuant to Rule 26(b)(5) identifying Thomas E. Brown, M.D., and William N. Foxley, M.D., as nonparties at fault in causing the death of plaintiff's decedent. LyphoMed did not file a timely notice of nonparties at fault.

In January of 1991, the plaintiffs began negotiating with the hospital to settle the case. Both parties considered a type of agreement that would require the hospital to remain as a defendant throughout the trial to minimize any effort that LyphoMed might make to cast the blame on the hospital. According to the hospital's attorney, a settlement agreement which would require the hospital to remain in the case throughout the trial was against the practice followed by both the hospital and its insurance carrier.

In March 1991, some nine months after it filed its answer, LyphoMed responded to an interrogatory propounded by the plaintiff that asked whether LyphoMed contended that the death was caused in whole or in part by anyone other than LyphoMed, whether such person was named as a defendant or not. LyphoMed answered that it did not. According to Monte Simpson, the attorney who prepared LyphoMed's answer, this answer was a mistake that resulted from her assumption that the interrogatory related only to nonparties. Two other attorneys for LyphoMed had reviewed the answers to interrogatories. The record is silent as to why, if the answer was indeed a mistake, they did not

correct it. Ms. Simpson, without contradiction, also asserted that she had repeatedly advised all counsel that LyphoMed's primary defense was that the hospital and its staff were responsible for the death.

Ultimately, the plaintiffs' settlement proposal, which would have required the hospital to remain in the case, was rejected by the hospital, and on April 15, 1991, the hospital offered to settle its liability for $250,000 without the condition that it remain in the case. The plaintiffs countered with an offer to accept $300,000 without the provision that the hospital remain as a defendant.

In the meantime, shortly after the answer to the interrogatory was filed, LyphoMed retained new counsel. On April 22, 1991, within three weeks of the time the answer to the interrogatory was filed, new counsel told the plaintiffs' attorney that the answer to the interrogatory was incorrect and said that LyphoMed would amend its answer to claim that others, both parties and nonparties, were at fault. The plaintiffs' attorney was informed that among these were the hospital, the nurse who gave the drug, and the attending physician. Two days after being advised that an amended answer to the interrogatory would be forthcoming, the plaintiffs entered into a settlement agreement with the hospital on the terms the plaintiffs had last proposed. To this point, neither the plaintiffs nor the hospital had ever told counsel for LyphoMed that settlement negotiations were underway and had been consummated.

In early May, LyphoMed served an amended response to the interrogatory in which it identified the hospital and two nurses employed by the hospital as persons or entities whose negligence caused the death. The amended answer also stated that Thomas E. Brown, M.D., may also have been negligent. LyphoMed also filed

---

1. The plaintiffs do not argue that the court can never grant relief from a failure to comply with Rule 26(b)(5) except upon the terms set forth therein. Instead, as will appear below, they rely on their interpretation of the facts of this case to say that no relief can be granted under any applicable standard. We assume that under Rule 6(b), Arizona Rules of Civil Procedure, the court can allow a late filing of the notice. *See also* Rule V(a)(3), Uniform Rules of Practice for the Superior Court, which allows late listing of nonparties at fault for good cause shown.

a motion for leave to file a "Rule 26(b)(5) Identification of Non–Parties At Fault."

The plaintiffs objected to the amended response to the interrogatory and moved for partial summary judgment to preclude LyphoMed from attempting to allocate fault to any other entity or person. Counsel for the plaintiffs, in support of plaintiffs' objection and motion for partial summary judgment, advised the court that the plaintiffs and the hospital had proceeded with the settlement based on the "fact" that it was too late under the rules for LyphoMed to amend its answer to the interrogatory.

The trial judge denied LyphoMed leave to file the Rule 26(b)(5) statement, struck its amended response to the interrogatory, and granted the plaintiffs' motion for partial summary judgment. The effect of this was to preclude LyphoMed from putting on evidence to show, and arguing, that the hospital or its employees or the treating physician were liable for the death. In ruling on the matter the judge said:

> I'm going to deny your request to amend your answer and going to rule that you are stuck and have to live with that answer of "no." It's hard for me to believe that an attorney who is admitted to practice law in this state would have difficulty in reading a rather clear and straightforward answer to interrogatory. I think there must be some right of reliance by all counsel, and plaintiff's counsel in this particular case, that when there is an affirmative answer of "no," that they can rely upon that answer. And I think that your interpretation of 2506(b), and Rule 26(b)(5) would render meaningless the deadlines that are contained therein.

The judge's minute entry regarding his ruling reads as follows:

> It is the view of this Court that pursuant to Rule 16.1 ARCP, that the settlement reached between the Plaintiffs and Defendant Winslow Memorial Hospital is a good faith settlement so that Winslow Memorial Hospital shall have no future liability as a result of the death of Bethanie Carter and/or her unborn fetus.

It is also the view of this Court that LyphoMed's Request for Leave to Identify Former Parties that are now Non–Parties at Fault pursuant to Rule 26(b)(5) is untimely and inappropriate, especially in light of the potential prejudice to Plaintiffs and "the empty chair" defense were Defendant LyphoMed to be permitted to argue the liability of others in the trial of this matter. This Court believes that Defendants misread the first part of the second sentence in A.R.S. § 12–2506(B) and that their affirmative answer "No" to a plain and unambiguous interrogatory by the Defendant's former counsel should preclude Defendant LyphoMed from arguing at trial that other entities other than the parties herein are responsible for the subject wrongful death.

## NEITHER THE STATUTE NOR THE RULE REQUIRED LYPHOMED TO GIVE NOTICE THAT IT WOULD CLAIM THE HOSPITAL WAS RESPONSIBLE

■ The trial judge was mistaken in his belief that LyphoMed was required to file notice pursuant to A.R.S. § 12–2506 advising the plaintiffs that it was entitled to have fault apportioned to the hospital. The statute is clear that a defendant who wishes to have the trier of fact apportion fault among all persons who contributed to the injury must give "notice before trial, in accordance with requirements established by court rule, that a *nonparty* was wholly or partially at fault." A.R.S. § 12–2506(B) (emphasis added). The statute also allows the trier of fact to apportion the fault of a nonparty with whom the plaintiff has entered into a settlement agreement regardless of whether another defendant has given notice of an intent to request such apportionment. The rule adopted to implement the statute is Rule 26(b)(5), Arizona Rules of Civil Procedure, and it also applies only to nonparties at fault. The purpose of the notice requirement is to deal with situations where the plaintiff is unaware of a nonparty's fault. *See* The Majority Report of the Subcommittee Report on Notice

Rules Pertaining To Allegations of Nonparties at Fault filed by the Board of Governors of the State Bar of Arizona in support of the Petition for Adoption of Rule of Court Concerning Disclosure of Claim of Non–Party Liability, which was filed as an appendix to the "Petition for Adoption of Rules of Court Concerning Disclosure of Claim of Non–Party Liability" filed in the Supreme Court of Arizona by the State Bar of Arizona on December 1, 1988. Since the hospital was a party to the action, neither the statute nor the rule required that LyphoMed had to give notice to the plaintiffs or else forfeit its right to have the hospital's fault apportioned.

## LYPHOMED WAS REQUIRED TO FILE ITS OWN NOTICE OF NONPARTIES AT FAULT

■ The next question is whether LyphoMed was required to give notice under A.R.S. § 12–2506 and Rule 26(b)(5) with respect to the nurses and the doctor who it claims were at fault. LyphoMed insists that it was not required to do so because the hospital, while it was still a defendant in the case and before it settled, had given notice pursuant to Rule 26(b)(5) that doctors Brown and Foxley were nonparties at fault. While the parties do not discuss the matter, presumably no notice naming the nurses as nonparties at fault was necessary because they are employees of the hospital, which is a party. Since, as LyphoMed argues, the purpose of the statute and the rule is to identify for the plaintiff any unknown persons or entities who may have caused the injury in time to allow the plaintiff to bring them into the action before the statute of limitations expires, the reason for the rule was fully served when the hospital gave notice.

The plaintiffs insist that each and every party who is going to request the apportionment of a nonparty's fault must file its own notice of that intent pursuant to the rule. They point out that the rule says "*any party* who alleges, etc. ... shall provide the identity, etc. ... within 150 days after filing of *that party's answer.*"

■ The plaintiffs are correct. The clear wording of the statute favors their position. Further, while the main purpose of the rule may be to make plaintiffs aware of the existence of nonparties who may be responsible for their injuries, that is not its only purpose. It is useful, as perhaps this case demonstrates, for each party to know exactly what every other party in a case is claiming with respect to who caused the injury. We hold then, that one party cannot rely on the notice given under Rule 26(b)(5) by another party.

## LYPHOMED IS NOT ESTOPPED TO ASSERT THAT THERE ARE NONPARTIES AT FAULT

■ We turn to why we have granted relief even though we have rejected LyphoMed's interpretation of the statute and the rule. First, the statute and the rule in question have never before been construed by an appellate court, and while we do not agree with LyphoMed's position, we cannot say that its reliance on the hospital's notice of nonparties at fault was entirely unreasonable. That is particularly true because the secondary policy we find in the rule— the notification to every party *by every party* of all claimed nonparties at fault—is just that, a secondary policy. Certainly, the more important function of making the plaintiffs aware of nonparties who might be at fault was fully served in this case.

Second, the trial judge was mistaken, in a very significant way, in his belief that LyphoMed was required to give notice under the statute and the rule of a claim that other parties to the action were at fault. This error was intertwined with the trial court's consideration of whether to allow an amendment to the answer to interrogatories, and it is possible that had the judge realized his mistake he would have allowed the filing of an amended answer.

Third, in deciding not to allow the filing of an amended answer to the interrogatory, the trial judge focused too narrowly on one facet of the conduct of LyphoMed's attorney and attached too much weight to the supposed prejudice the plaintiffs suffered as a result of that conduct. Under the

facts of this case, LyphoMed cannot be equitably estopped to assert the fault of the hospital and others. We elaborate on this aspect of the case below.

The plaintiffs assert that the trial judge found that LyphoMed's attorney was not telling the truth, and that she had deliberately given a misleading answer to the interrogatory to "fool" the plaintiffs and then, once they had settled with the hospital, to "spring from the weeds" and point the finger at the hospital. We are not certain that the trial judge accepted this scenario as the plaintiffs describe it. The judge may have believed that LyphoMed's attorney had been careless in answering the interrogatory and that LyphoMed was bound by that carelessness. He was not presented with any evidence that LyphoMed's counsel even knew that the plaintiffs and the hospital were negotiating a settlement, and the absence of such knowledge renders somewhat pale the sinister cast the plaintiffs place on the matter. Alternatively, however, the judge may have believed that LyphoMed's counsel deliberately misled the plaintiffs in an effort to place them at a disadvantage and was simply tactful in the way he phrased his finding.

Regardless of what the judge believed, there are a number of things about the evidence which we find troubling. The nature of LyphoMed's defense, which was revealed in its pleadings, that the doctors and/or the nurses delivered a massive overdose of medication, is one that should naturally have alerted the plaintiffs to the fact that LyphoMed would point the finger at others.

Counsel for LyphoMed asserted that she repeatedly told counsel for the plaintiffs that LyphoMed was claiming that the hospital and its staff were at fault. She avowed that she informed the plaintiffs' lawyer of this at a pretrial conference that occurred in September 1990, and again at a conference held in a cafeteria around the same time. She further avowed that, following the deposition of one of the nurses, she specifically asked one of the plaintiffs' attorneys, whom she specifically named, to dismiss the case against LyphoMed be-

cause others, and not LyphoMed, were responsible for the deaths. There is no contravening affidavit from the attorney so named.

The affidavit of another attorney for the plaintiffs does not squarely contradict Ms. Simpson's assertions, and in fact acknowledges that the plaintiffs' attorney fully expected LyphoMed to point the finger of blame at others. The plaintiffs' attorney does not expressly deny that Ms. Simpson made the statements referred to in her affidavit, but says only that he was surprised when told that LyphoMed would be "changing its position" by seeking to place the blame on others. He did not express this surprise to counsel for LyphoMed "because it was obvious to the plaintiff's attorneys that LyphoMed was unable to change its position because it was in violation of the Arizona Rules of Civil Procedure." The affidavit of plaintiffs' counsel does not address whether he had any reason to believe that the answer to the interrogatory represented a sudden and genuine change of position for LyphoMed, or whether it occurred to him that the answer might be a mistake. In other words, it says nothing about the curious conflict between the answer to the interrogatory and the position LyphoMed had consistently maintained in its pleadings and conversations with plaintiffs' counsel.

The trial court's apparent failure to take these considerations into account is not the most troubling aspect of this case. Far more problematical—in fact determinative—is that the plaintiffs and the hospital, in the full knowledge that LyphoMed would assert that other parties were the cause of the injury, proceeded to finalize their agreement just two days after they were told that LyphoMed would seek to amend its answer to the interrogatory. The plaintiffs' argument in the trial court was heavily dependent upon the idea that they had relied on LyphoMed's negative answer to the interrogatory when they proceeded to finalize the settlement with the hospital without requiring the hospital to remain in the case as a defendant throughout the trial. In essence, they were arguing equitable estoppel. The trial judge, in observing that he was sure "there must be some

**430**

right of reliance," swept too lightly over the law of equitable estoppel as it applies to the facts of this case.

The Supreme Court of Arizona, in *City of Glendale v. Coquat*, 46 Ariz. 478, 481, 52 P.2d 1178, 1181 (1935), said:

> Equitable estoppel may be defined as the effect of the voluntary conduct of a party, whereby he is absolutely precluded from asserting rights which might have otherwise existed as against another person who, *in good faith, has relied upon such conduct and has been led to change his position for the worse.*

(Emphasis added.)

■ As a general rule, it is essential to the existence of an estoppel that the representation be relied on and that such reliance be justified. Reliance is not justified when knowledge to the contrary exists. *Bohonus v. Amerco*, 124 Ariz. 88, 90, 602 P.2d 469, 471 (1979).

While we accept the fact that settlement negotiations between the plaintiffs and the hospital were under way for some time before an agreement was reached, we do not believe that the plaintiffs could hastily build an estoppel claim by proceeding in the face of the uncertainty that had arisen when they were unequivocally told that the answer to the interrogatory was a mistake and LyphoMed was claiming that the hospital and others were at fault. In short, at the time the plaintiffs finalized the agreement with the hospital, it was not reasonable for them to rely on the answer to the interrogatory. That is true even though their argument is couched in terms of their asserted belief that LyphoMed was, as a matter of law, bound by its answer to the interrogatory. Since the statute and rule relating to the notice of nonparties at fault were open to interpretation, and since the attempt to amend was made more than thirty days before the date of trial, plaintiffs' counsel was by no means on solid ground in this belief. Rule 6(b), Arizona Rules of Civil Procedure, allows the court to enlarge the time for compliance with the rules. Rule V(a)(3) of the Uniform Rules of Practice for Maricopa County expressly allows relief from a failure to disclose a nonparty at fault for good cause shown.

Had LyphoMed's motions been heard before the settlement was entered, the plaintiffs, bereft of the ability to show prejudice, would have been hard put to find a reason why the motions ought not be granted. *See* Ariz.R.Civ.P. 26(e)(1); and *Greco v. Manolakos*, 24 Ariz.App. 490, 539 P.2d 964 (1975) (abuse of discretion to exclude evidence for failure to supplement answer to interrogatory where defendant suffered no prejudice).

In summary, on the record before us, we believe the trial judge erred in concluding that LyphoMed was required to give notice pursuant to A.R.S. § 12–2506 of the fault of other parties to the action. The trial judge seems to have given too little weight to the factors that supported the explanation of LyphoMed's counsel for providing a negative answer to the interrogatory, and even according his decision on that point the greatest deference, clearly abused his discretion in finding justifiable reliance on the part of the plaintiffs. Since the parties have not raised the matter, we do not address what effect our opinion might have on the validity of the settlement between the plaintiffs and hospital. Our ruling makes it unnecessary to address the issue of invited error raised by the plaintiffs based on additional motions made after the judge had ruled as we describe above.

The order of this court dated September 25, 1991, accepting jurisdiction and granting relief, and the order of September 27, 1991, clarifying the relief granted are affirmed. The trier of fact, if it finds the defendant LyphoMed liable, shall assess the percentage of LyphoMed's fault by considering the fault of the hospital and its employees and the physician identified as nonparties at fault. LyphoMed may pursue discovery to disclose fault on the part of these entities and persons and may offer evidence of such fault at trial. LyphoMed may amend its interrogatory answers in accordance with the terms of Rule 26(e), Arizona Rules of Civil Procedure.

GRANT, P.J., and EUBANK, J., concur.