903 P.2d 641

**Edelia G. SOTO, Plaintiff/Appellant,**

**v.**

**Troy O. BRINKERHOFF, M.D., and D. Nick Morrison, Jr., M.D., Defendants/Appellees.**

No. 2 CA–CV 95–0147.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 31, 1995.

Van O'Steen and Partners by Steven J. Kuehl, Phoenix, for plaintiff/appellant.

Teilborg, Sanders & Parks, P.C. by Neil C. Alden and Bruce Smith, Phoenix, for defendant/appellee Brinkerhoff.

Doyle, Winthrop, Oberbillig & West, P.C. by Lawrence F. Winthrop, Phoenix, for defendant/appellee Morrison.

## OPINION

DRUKE, Chief Judge.

A jury awarded appellant Edelia Soto $431,441 on her medical malpractice claim against appellees Dr. Troy Brinkerhoff and Dr. Nick Morrison, apportioning fault as follows: 20 percent to Soto, 25 percent to each appellee, 20 percent to nonparty Mesa Lutheran Hospital (MLH), and 10 percent to nonparty Dr. David Dawson. On appeal, Soto contends that the trial court erred by: (1) denying her motion to preclude appellees from identifying Dr. Dawson as a nonparty at fault, (2) submitting the issue of Dr. Dawson's fault to the jury, and (3) denying her motion for new trial or additur as to Dr. Dawson and MLH. We reverse only as to the issues involving Dr. Dawson.

On October 18, 1990, Soto was admitted to MLH for abdominal surgery and discharged on October 25. Three days later, she was readmitted due to complications and then discharged on November 7 with a catheter for intravenous feeding. On November 23, she was again admitted to MLH because the site of the catheter had become infected. Soto was treated initially by Dr. Brinkerhoff, who removed the catheter, ordered blood cultures, and prescribed a broad spectrum antibiotic, Ancef, a cephalosporin. When Dr. Brinkerhoff went on leave, Dr. Morrison assumed Soto's care and discharged her on November 27, continuing her on cephalosporins. Before Soto's discharge, however, MLH had determined that her infection was resistant to cephalosporins but had not so advised Drs. Brinkerhoff and Morrison directly—the information apparently was only entered into MLH's computer system.

Soto testified that, because she had continuing neck and back pain following her discharge, she attempted twice to see Dr. Morrison but was unsuccessful. She then went to the emergency room of a local hospital, which took cervical x-rays and gave them to Soto to take to Dr. Brinkerhoff. When she saw Dr. Brinkerhoff on December 14, he prescribed anti-inflammatory and muscle relaxant medications, but did not look at the hospital x-rays or take any himself. On December 22, Soto sought chiropractic treatment from Dr. Dawson, who took x-rays but reported nothing unusual, except for a misalignment of the vertebrae that he treated until January 2, 1991.

The following week, Soto saw Dr. Douglas Parkin, who took x-rays and a bone scan, observed a collapsed neck vertebra at C–6, and referred her to a specialist. Soto saw the specialist in mid-February and subsequently learned that her pain was caused by

the unresolved infection, which had apparently traveled from the catheter site to the C–6 vertebra. While the infection was successfully treated with an antibiotic to which it was sensitive, Soto required a corpectomy (cervical fusion) because the infection had destroyed part of the C–6 vertebra.

## DR. DAWSON AS NONPARTY AT FAULT

Approximately one month before trial, appellees moved to identify Dr. Dawson as a nonparty at fault pursuant to Rule 26(b)(5), Ariz.R.Civ.P., 16 A.R.S. Soto objected to the motion and separately moved to preclude appellees "from eliciting testimony to attempt to identify [Dr. Dawson] as wholly or partially at fault." Soto argued that appellees' motion was untimely because it was not filed within the time limits prescribed by Rule 26(b)(5), which requires a party to identify a nonparty at fault "at the time of compliance with the requirements of Rule V(a) of the Uniform Rules of Practice of the Superior Court, if applicable, or within one hundred fifty (150) days after the filing of that party's answer, whichever is earlier." Soto further objected to appellees' motion on the ground that she was barred from adding Dr. Dawson as a defendant by the statute of limitations.

While appellees agreed that their motion was untimely, they contended that it came within the rule's exception of "establishing newly discovered evidence of such nonparty's liability which could not have been discovered within the time periods for compliance...." *Id.* Specifically, appellees argued that they did not discover Dr. Dawson's liability until the deposition of Soto's causation expert, Dr. Barry Friedman, approximately two months before trial, who stated that Dr. Dawson had misread Soto's x-rays because they showed a piece of bone missing from her C–6 vertebra that "[o]nly a blind man could miss." Dr. Dawson conceded during his subsequent deposition that he had misread the x-rays and said that, had he not done so, he would have referred Soto to a specialist. The trial court considered the motions on the first day of trial, ruling as follows:

> What I am going to [do] is deny [Soto's] motion to preclude [appellees] from naming [Dr. Dawson] as a nonparty at fault, and we'll find out at the end of the case whether or not I am going to instruct the jury on it.

> In other words, I am not going to foreclose that on the basis of the fact it was lately disclosed. I am not very comfortable with that ruling, but I don't think I would be comfortable with a ruling in reverse, either.

On appeal, Soto contends that the court erred in denying her motion to preclude. We agree.

■ The trial court has broad discretion in ruling on discovery and disclosure matters. *Plattner v. State Farm Mutual Automobile Insurance Company,* 168 Ariz. 311, 812 P.2d 1129 (App.1991). The court's ruling will not be disturbed on appeal absent an abuse of discretion. *LyphoMed, Inc. v. Superior Court,* 172 Ariz. 423, 837 P.2d 1158 (App. 1992). That discretion is abused if the record fails to establish substantial evidence to support the ruling. *Grant v. Arizona Public Service Company,* 133 Ariz. 434, 652 P.2d 507 (1982). In this case, the record establishes the following.

Approximately one year before trial, appellees had received copies of Dr. Dawson's medical records and knew that he had taken x-rays of Soto. Appellees also knew that the x-rays were not included in the records they had received, but they neither requested nor subpoenaed the x-rays, giving the following reasons in their answering brief:

> Based on [Dr. Dawson's] interpretation of only a misalignment of the vertebrae, counsel did not deem it necessary to obtain copies of the films, have them interpreted, and make sure that the films had been correctly interpreted.

> \*   \*   \*   \*   \*   \*

One of the main allegations against Dr. Brinkerhoff is that he failed to diagnose cervical osteomyelitis in a timely manner. Dr. Brinkerhoff defended the case by pointing out that the most sensitive and next most sensitive radiologic procedures (bone scan and plain x-ray, respectively) both were negative and both were so reported [by Drs. Dawson and Parkin] within

the 30–day period following Dr. Brinker-hoff's last office visit with [Soto]. Dr. Brinkerhoff therefore defended the causation allegation by alleging that, even had he pursued [Soto's] complaints of pain, any testing would have been negative.

Simply put, appellees chose not to discover that which they could have discovered within the times prescribed by Rule 26(b)(5). The issue, therefore, is whether such conduct entitles appellees to the relief afforded by the rule's exception for newly discovered evidence.

■ The issue raised by this appeal has not been addressed previously by our appellate courts. Numerous cases have, however, determined what constitutes newly discovered evidence under two other rules of civil procedure, Rules 59(a)(4) and 60(c)(2), which permit, respectively, the granting of a new trial and relief from a final judgment based on such evidence. The cases interpreting these two rules have established four requirements for newly discovered evidence that we find apply to this case: [1]

(1) the newly discovered evidence must have been in existence at the time of trial, *Roberts v. Morgensen Motors*, 135 Ariz. 162, 659 P.2d 1307 (App.1982); *Ashton v. Sierrita Mining and Ranching*, 21 Ariz.App. 303, 518 P.2d 1020 (1974);

(2) the evidence must not have been possessed by the party seeking relief, *Wendling v. Southwest Savings and Loan Association*, 143 Ariz. 599, 694 P.2d 1213 (App.1984); *Roberts;*

(3) that party must not have known of the evidence, *Lawless v. St. Paul Fire & Marine Insurance Co.*, 100 Ariz. 392, 415 P.2d 97 (1966); *Sabin v. Rauch*, 75 Ariz. 275, 255 P.2d 206 (1953); and

(4) the evidence must not have been available to that party. *Estate of Page v. Litzenburg*, 177 Ariz. 84, 865 P.2d 128 (App.1993);

*Lake Havasu Resort, Inc. v. Commercial Loan Insurance Corp.*, 139 Ariz. 369, 678 P.2d 950 (App.1983); *Ghyselinck v. Buchanan*, 13 Ariz.App. 125, 474 P.2d 844 (1970).

In this case, the first two requirements are satisfied, but the last two are not. Dr. Dawson's x-rays existed before trial and were not in appellees' possession, but appellees knew of the x-rays and they were available through discovery within the times prescribed by Rule 26(b)(5). Accordingly, appellees' subsequent discovery that the x-rays were negligently misread by Dr. Dawson cannot be considered newly discovered evidence under the exception to Rule 26(b)(5), notwithstanding appellees' above-stated reasons for not timely obtaining the x-rays. Such reasons have been consistently rejected as grounds for a new trial based on newly discovered evidence under Rule 59(a)(4) and are likewise rejected here. *See Estate of Page*, 177 Ariz at 92–93, 865 P.2d at 136–37 (new trial properly denied when movant decided not to subpoena records because they did not fit movant's theory of case); *Chambers v. Taber*, 21 Ariz.App. 291, 293, 518 P.2d 1008, 1010 (1974) (denial of new trial affirmed when movant chose not to contact witness about issue in case because movant assumed issue not in dispute; party has duty to gather evidence necessary to case, and "[u]nless and until the opposing party formally concedes an issue, the litigant should continue to gather evidence bearing upon that issue"); *Schneider v. City of Phoenix*, 9 Ariz.App. 356, 360, 452 P.2d 521, 525 (1969) (new trial unwarranted when movant did not fully investigate cause of accident because movant relied on doctrine of *res ipsa loquitur* ).

In conclusion, we hold that the trial court erred in denying Soto's motion to preclude because the untimely identification of Dr. Dawson as a nonparty at fault was attributable to appellees' tactical decision not to conduct discovery, rather than their discovery of

---

1. A fifth requirement of Rules 59(a)(4) and 60(c)(2) is diligence, but it is not an express requirement of Rule 26(b)(5). The omission of this requirement from Rule 26(b)(5) appears to be an oversight because the language of the rule's exception was purportedly taken from Rule 60(c)(2). *See* State Bar of Arizona, "Petition for Adoption of Rule of Court Concerning Disclosure

of Claim of Non–Party Liability," App. D, Maj. Rep. at 2 (filed with Arizona Supreme Court December 1, 1988). Assuming without deciding that diligence is a requirement of Rule 26(b)(5), the requirement is not in issue when, as here, a party consciously avoids discovering that which is later claimed to be newly discovered.

new evidence that could not have been discovered within the times prescribed by Rule 26(b)(5). Thus, appellees failed to satisfy the rule's exception for newly discovered evidence. To hold otherwise would undermine the rule's primary purpose of identifying "for the plaintiff any unknown persons or entities who may have caused the injury in time to allow the plaintiff to bring them into the action before the statute of limitations expires." *LyphoMed*, 172 Ariz. at 428, 837 P.2d at 1163. That opportunity was foreclosed here, however, by appellees' untimely discovery and identification of Dr. Dawson as a nonparty at fault, thus depriving Soto of 10 percent of her recovery.

## SUBMITTING DR. DAWSON'S FAULT TO JURY

Soto next contends that the evidence was insufficient to submit the issue of Dr. Dawson's fault to the jury. In light of our holding above, this contention is moot and need not be further addressed.

## NEW TRIAL OR ADDITUR

Soto finally contends that the trial court erred in denying her motion for new trial or additur, arguing that fault should not have been apportioned to either Dr. Dawson or MLH. We agree as to Dr. Dawson, for the reasons stated above, but disagree as to MLH because Soto invited any error in submitting the issue of MLH's fault to the jury. While the court was settling instructions and after it had ruled that Dr. Dawson's fault would be submitted to the jury, Soto's counsel requested that MLH "be included as a nonparty at fault because the court has already stated that Dr. Dawson would be included."

Although Soto acknowledges that her request constitutes invited error, she nonetheless argues that the court erred in giving the instruction because of "the lack of sufficient evidence of fault by MLH." In support of her argument, Soto cites *Walter v. Simmons*, 169 Ariz. 229, 818 P.2d 214 (App.1991), in which Division One of this court held that

even though a party invites the giving of an erroneous instruction, the trial court may nevertheless grant a new trial when (1) there is absolutely no evidence to support the instruction, (2) the court may have caused the error, and (3) a new trial is necessary to prevent a miscarriage of justice. The first condition is absent here, however, because the record is not totally devoid of evidence to support the instruction. In fact, Soto's counsel argued that sufficient evidence supported the instruction when requesting that it be given.

[SOTO'S COUNSEL]: Obviously, as a matter of strategy, I feel like [appellees] were pointing the finger [at MLH], and certainly by implication, they were ... using Dr. Brinkerhoff to establish that, and he testified that he didn't have [the hospital lab report] in his box, and he noticed that when the litigation started. When he looked at his records, it wasn't in his records, so he assumed it wasn't in his box. And he testified [at trial] consistent with his deposition that he believes that that was fault on the part of [MLH].

*Walter* is therefore inapposite and the trial court properly denied the motion for new trial or additur as to MLH.

For the foregoing reasons, we reverse only the trial court's order denying Soto's motion for new trial or additur as to Dr. Dawson. Rather than remand for a new trial, however, and pursuant to the parties' agreement on appeal, we reapportion fault on a pro rata basis as follows: Soto 22.2% (2/9), appellees 55.6% (5/9), and MLH 22.2% (2/9). The matter is therefore remanded to the trial court to amend the judgment accordingly.

HATHAWAY, J., and JOHN F. KELLY, Judge *, concur.

---

* A judge of the Pima County Superior Court authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed June 30, 1995.