454 P.2d 184

Sam J. FRAZIER and Janet Frances Frazier, his wife, Appellants,

v.

O. S. STAPLEY COMPANY, Appellee.

No. 1 CA–CIV 675.

Court of Appeals of Arizona.

May 8, 1969.

Shepard M. Weinstein, Phoenix, for appellants.

Lovell B. Lieurance, Phoenix, for appellee.

HATHAWAY, Judge.

O. S. Stapley Company dba Arizona Hardware Company filed a lawsuit against Sam J. Frazier and others, alleging that the defendant, Frazier, had executed a guarantee agreement and had refused to pay certain sums allegedly due thereunder by virtue of the default of the principal obligor. The matter was tried to the court and judgment was given to the plaintiff and against the defendant.

Early in 1963, Frazier was engaged in a partnership business venture named Damaged Freight Furniture Liquidators. While so engaged he executed the following guarantee agreement in favor of the plaintiff:

"January 10, 1963

"To Whom It May Concern:

"I, the undersigned, S. J. Frazier, do hereby personally guarantee payment in

full to Arizona Hardware Company for all merchandise which I may purchase or *any company with which I am affiliated may purchase* from Arizona Hardware Company.

"This guarantee of payment is to also cover merchandise which I have purchased prior to this date and which *will remain in effect until such time as it is revoked by me in writing.*

"In witness whereof, the undersigned has executed the foregoing this 10th day of January, 1963.

S. J. Frazier"

(Emphasis supplied)

Frazier and his partner, Whitehead, terminated their partnership and during September, 1963, they began doing business through a corporate entity known as Royal Enterprises, Inc. Arizona Hardware Company would not do business with Royal Enterprises unless an individual would execute a guarantee. When requested by Arizona Hardware Company to sign another guarantee agreement, Frazier refused, but Whithead and another person did sign a guarantee agreement. Subsequently, Arizona Hardware and Royal Enterprises entered into a Trust Receipt Financing and Floor Plan Agreement signed by Frazier as president of Royal Enterprises. Under the financing agreement Royal Enterprises was trustee and Arizona Commercial Finance Company the entruster. After this financing agreement was entered into, Frazier sold his interest in Royal Enterprises to Whitehead. The entruster subsequently assigned its interest to Arizona Hardware.

After severance of his relationship with Royal Enterprises, Frazier opened and operated a furniture store in Phoenix, under the name of Hollywood Furniture Company. Frazier contends that he informed Arizona Hardware Company by telephone that he had sold his interest in Royal Enterprises. Arizona Hardware responds that he gave neither oral nor written notice at any time of revocation of the personal guaranty agreement. Frazier did

business with Arizona Hardware Company at his new location, but is not indebted to them on account of transactions under the new business; these having been paid in full during March of 1965. Frazier contends that after his disassociation from Royal Enterprises and after Arizona Hardware had done business with him as Hollywood Furniture, the amount owed by Royal Enterprises to Arizona Hardware was paid in full. Arizona Hardware maintains that it was not.

During the period from May 29, 1964 to August 7, 1964, Royal Enterprises purchased goods on open account from Arizona Hardware totaling $114.16 in value. During the same period, Arizona Hardware also furnished Royal Enterprises $1,665.13 worth of goods and materials under the Trust Receipt Financing Agreement. Royal Enterprises could not pay for either. Arizona Hardware thereafter made demand upon Frazier, based upon the guarantee agreement, that he pay the account. Frazier denied responsibility and this lawsuit followed.

■ The following definition of a trust receipt is given in 14 C.J.S. Chattel Mortgages § 9, p. 599:

"A 'trust receipt' is a well-known instrument in common use whereby an arrangement, more or less frequent in modern business relations, is made by which a banker, advancing money to enable a customer to purchase merchandise, takes the title or bill of lading in his own name and thereafter surrenders possession to the customer, who gives a trust receipt, under which it is agreed that the title to the merchandise shall remain in the banker as security until he is repaid the amount advanced, and that the proceeds of any sale of the merchandise shall be applied to the repayment of the advances made by the banker on account of the original purchase price."

■ There appears to be a wide divergence of opinion as to the legal significance of such an arrangement. The defendant contends that the transaction is a bailment, and that Royal Enterprises did not "purchase" this merchandise within the meaning of Frazier's guarantee. The plaintiff contends that it was a sale-and-mortgage arrangement.

We know of only one case in this jurisdiction which deals with this type of agreement. In C. I. T. Corporation v. Seaney, 53 Ariz. 72, 85 P.2d 713 (1938), our Supreme Court said:

"The real question is whether or not, as a matter of substance and not of form, the interest * * * in the property was that of an owner, with the dealer merely acting as a sales agent for the petitioner [finance company], or whether such interest was in reality that of a lienholder as security for money advanced, with the true interest of the dealer that of an owner subject to a lien." 53 Ariz. 80, 85 P.2d 717.

After determining that the arrangement in fact was one by which the dealer had obtained refrigerators on credit, paying only ten per cent down, the court held:

"Under all these circumstances, we think the only reasonable conclusion to be reached was that under the trust agreement, no matter what its language, *the real interest* of the petitioner [finance company] *was that of a lienholder* * * *.*" 53 Ariz. 80–81, 85 P.2d 717.

The pleadings in the case at bench indicate that the arrangement between Royal Enterprises, Inc., and Arizona Commercial Finance Company (the plaintiff's assignor of the trust receipt) was essentially the same as the arrangement in the *Seaney* case. Goods were purchased under the agreement during the period of October 21, 1963 through August 7, 1964, and obviously at the request of Royal Enterprises rather than the finance company.

■ Subsequent to the date of the *Seaney* case, Arizona adopted the Uniform Trust Receipts Act, A.R.S. § 44–821 et seq.[1]

1. The Uniform Trust Receipts Act has been repealed, but was in effect at the time this claim arose. See Laws 1967, Ch. 3, § 6.

The California Court of Appeals, on the basis of the Uniform Trust Receipts Act, has subsequently distinguished *Seaney* and held that a trust agreement for the financing of automobiles was not a chattel mortgage. C. I. T. Corporation v. Commercial Bank of Patterson, 64 Cal.App.2d 722, 149 P.2d 439 (1944). We decline to adopt that distinction.[2] The Uniform Trust Receipts Act, in our opinion, does not alter the reasoning behind the *Seaney* decision. The Act provides, in part:

"A. A trust receipt transaction within the meaning of this article is any transaction to which an entruster and a trustee are parties, for one of the purposes set forth in subsection C, whereby:

"1. *The entruster or any third person delivers to the trustee goods,* documents or instruments *in which the entruster,* prior to the transaction has, or for new value, *by the transaction acquires,* or as the result thereof is to acquire promptly, *a security interest* * * *.

\*   \*   \*   \*   \*   \*

"C. A transaction shall not be deemed a trust receipt transaction unless the possession of the trustee thereunder is for a purpose substantially equivalent to any one of the following:

"1. In the case of goods, documents or instruments, *for the purpose of selling or exchanging* them, or of procuring their sale or exchange * * *." (Emphasis supplied.) A.R.S. § 44–822.

The "entruster," plaintiff's assignor, Arizona Commercial Finance Company, acquired a "security interest" by means of the trust receipt transaction. "Security interest" was defined by A.R.S. § 44–821, subsec. 12 (a part of the now repealed Uniform Trust Receipts Act):

" 'Security interest' means a property interest in goods, documents, or instruments, *limited in extent to securing performance of some obligation of the trustee* or of some third person to the entruster, *and includes* the interest of a pledgee, and *title, whether or not expressed to be absolute, whenever such title is in substance taken or retained for security only.*" (Emphasis supplied.)

One purpose of the Uniform Act, as shown by the above sections, is to provide for a financing arrangement whereby a merchant can obtain goods for resale by allowing the title to the goods to remain in the seller, or a finance company, as security for payment. This creates a bailment with the right of sale. It differs from a chattel mortgage in that title does not pass. *Seaney* holds that this distinction is immaterial when the conduct of the parties indicates that the purpose of the transaction is to provide a security interest for the party lending the money. Our adoption of the Uniform Act does not change that reasoning, since the Act applies "whenever such title is in substance taken or retained for security only." *Cf.* Taube v. Ingraham, 290 F.2d 288 (8th Cir. 1961); Motor Contract Company v. Citizens & Southern Nat. Bank, 66 Ga.App. 78, 17 S.E.2d 195 (1941); In re Williams, 287 Mich. 689, 284 N.W. 609 (1939); American Discount Company v. Central Bank of Tampa, 135 So.2d 10 (Fla.App.1961); McCreary Tire & Rubber Company v. Crawford, 253 N.C. 100, 116 S. E.2d 491 (1960); In re Knollhoff, 239 F. Supp. 927 (D.Kan.1965).

■ Frazier next maintains that the guarantee only covered purchases made by "any company with which *I am* affiliated," and that the transactions occurred after he had notified the plaintiff that he was no longer affiliated with Royal Enterprises. Unfortunately, the record before us does not include a transcript and is therefore insufficient to enable us to consider Frazier's contentions. Orlando v. Northcutt, 103 Ariz. 298, 441 P.2d 58 (1968). The judgment recites that " * * * the respective parties presented evidence, both oral and documentary, before the court, and the

2. The California court has distinguished its own decision where the evidence shows that the transaction is essentially a sales

agreement. Security-First Nat. Bank of Los Angeles v. Taylor, 123 Cal.App.2d 380, 266 P.2d 914 (1954).

court having heard the evidence and being fully advised * * *" grants judgment for the plaintiff. No findings of fact are given, but the judgment implies the finding that the defendant was affiliated with Royal Enterprises, Inc., at the time the obligations were incurred. We have no means of determining from the inadequate record before us whether these implied findings were or were not supported by sufficient evidence. We will therefore assume that they were. Crouch v. Truman, 84 Ariz. 360, 328 P.2d 614 (1958); Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950); Chemi-Cote Perlite Corporation v. Harborlite Corporation, 4 Ariz.App. 268, 419 P.2d 398 (1966); Swansea Properties, Inc. v. Hedrick, 3 Ariz.App. 594, 416 P.2d 1015 (1966). It is not apparent from the record that the trial court committed reversible error.

Affirmed.

MOLLOY and KRUCKER, JJ., concur. NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.