905 P.2d 540

**In re Daniel J. RADACOSKY, Attorney/Appellant.**

**No. 2 CA–CV 95–0116.**

Court of Appeals of Arizona, Division 2, Department A.

June 1, 1995.

Review Denied Nov. 21, 1995.

---

**532**

Daniel J. Radacosky, Phoenix, in pro. per.

LIVERMORE, Presiding Judge.

Appellant, attorney for plaintiffs below, filed a motion for sanctions for alleged violations of discovery rules by the defendants. That motion was argued at a hearing on July 15, 1993. At that time it appeared that the case was not ready for the trial scheduled on July 20 because the parties had not completed discovery nor filed their pretrial statement. The court extended the trial date and, among other things, stated:

FURTHER ORDERED each counsel shall file simultaneous Supplemental Memoranda and supporting materials on the issue of appropriate sanctions by *5:00 p.m. August 6, 1993.* These memoranda shall set forth each sides position as to appropriate sanctions and set out a complete chronology of the discovery and disclosure disputes, include copies of all relevant correspondence, include any relevant time records, include all relevant investigatory records and include any similar documentation believed relevant.

Two months after the required memoranda were filed, the court issued the following ruling:

This slip and fall case was filed June 2, 1992 concerning Plaintiff's fall on sand spilled from an ash tray at Defendant United Artists Theater on September 14, 1991. Trial to a jury occurred during five judicial days from August 30, 1993 to September 7, 1993. The jury returned a unanimous verdict for the defendant.[1]

The history of preparation of this case for trial will not be here repeated. The substance of that preparation is contained in the four volume file and the parties memorandum. Filed with, and attached to, this minute entry is a Case Chronology prepared by the Court. Filed with, but not attached to, this minute entry is a Compendium of Plaintiffs' Disclosure Statements and a Compendium of Defendants' Disclosure Statements, both provided by counsel.

Both counsel complain bitterly the other has not followed either the letter or spirit of the July, 1992 amendments to the Civil Rules of Procedure requiring seasonable voluntary disclosure.

By way of example only, Plaintiff complains that Defendant did not timely determine or disclose the addresses and phone numbers of key witnesses.[2] It appears that a reasonable investigation as to these addresses was not undertaken by Defendant. It appears that Plaintiff's counsel did not make further specific inquiry, informally or formally, of Defense counsel as to the current address or whereabouts of these witnesses. As the case developed, little prejudice was experienced by Plaintiff due to this non-disclosure.

By way of similar example, Defendant complains that Plaintiff did not timely disclose that Plaintiff's investigator, Mr. Hughes, interviewed Defendant's employees as a group shortly after the accident. Plaintiff's initial Disclosure Statement dated August 14, 1992, sworn to by Plaintiff's counsel, states "Plaintiffs are not aware of any written or recorded statements by any witness to the incident of September 14, 1991...." Plaintiff's July 26, 1993 "Eleventh Supplementation" discloses that Mr. Hughes obtained oral statements by interviewing Defendant's employees and that the employees declined to sign witness statements. Plaintiff's "Thirteenth Supplementation" lists as a potential trial ex-

---

1. Before trial defendant had offered to settle the case for $100,000. Plaintiff demanded $400,000 and "would not take one penny less."

2. Defendant's initial disclosure statement listed the addresses of several key current and prior theater employees as "present address will be supplemented" or "present address unknown."

hibit, Mr. Hughes October 5, 1991 written report of these interviews.

Neither counsel addressed the issue of when Defense counsel knew his client's employees had been interviewed by Mr. Hughes. Apparently, defense counsel did not ask for information concerning Mr. Hughes' interviews until after the July 26, 1993 disclosure.

On December 7, 1992, the Court heard oral argument on Plaintiff's Motion To Compel Production Of Documents and conducted a Comprehensive Pretrial Conference. The Court's December 7, 1992 minute entry stated:

> "... it is apparent to this Court that the spirit of Rule 26.1 is not being followed by either party. The parties appear caught up in a procedural dispute about what was requested when, whether the request is too broad, and whether any objection to the request was waived."

Counsel were ordered to meet, face to face, and to "seek agreement on a cost effective and orderly discovery plan for this case."

At the continued Comprehensive Pretrial Conference held on January 21, 1993, new defense counsel and plaintiff's counsel appeared. After discussion, a firm trial date was set for July 20, 1993. Various firm pretrial dates, including an outside date for expert witness opinions and discovery completion, were set. The Court ordered that those dates could not be changed without good cause and the written approval of the Court.

On July 15, 1993 at oral argument on Plaintiff's Motion For Partial Summary Judgment Re: Non–Party At Fault and on Plaintiff's Motion to Compel/Motion for Sanctions/Motion In Limine, this Court specifically found, counsel: (1) had not timely filed their required Joint Pretrial Statement; (2) had not timely completed discovery; and (3) had agreed without approval or order of the Court to extend the discovery deadline. On the Court's motion, the trial was continued some forty days to August 30, 1993. During that forty day trial continuance, significant additional discovery was completed, primarily by Plaintiff.

This Court has deferred full consideration of and ruling upon counsel's competing Motions for Sanctions until after the conclusion of trial to allow review of the entire development of this case, to view the disclosures and non-disclosures in the context of the overall case preparation, and to gain perspective as to the particular disagreements of counsel in this action.

Based upon a detailed review of the entire record, this Court finds:

1. In this action there was a lack of meaningful and timely preparation of the central factual aspects of this case [3] by counsel for both parties.

2. Defense counsel conducted, at best, a minimal initial or ongoing investigation into the operative facts and occurrence witnesses.

3. Plaintiff's counsel conducted more of an initial investigation, but purposefully did not seasonably disclose either the fact of the investigation nor the substance of the information learned by Plaintiff's investigator Mr. Hughes.

4. Both counsel delayed needed discovery in hopes of avoiding the cost of adequate trial preparation.

5. Both counsel, and particularly Plaintiff's counsel, could not bring themselves to professionally cooperate in discovery of material facts as mandated by the Rules of Civil Procedure.

6. Plaintiff's counsel, in particular, aggressively used discovery issues and disputes as a litigation tactic to obtain a "win," [4] to place the opposition in a defensive mode, and to justify Plaintiff counsel's own tardy discovery efforts.

The tactical "discovery wars" which occurred in this action are not within the letter or spirit of the July, 1992 Rules of

---

**3.** As in many slip and fall cases, the pivotal issue was liability.

**4.** The sanction repeatedly urged by Plaintiff's counsel was a judgment of liability against Defendant.

Civil Procedure.[5] While trial was finally conducted in a manner fair and just to the parties, counsel's conduct has cost their clients, the Court, and the system needless expense and delay. On this record, sanctions for counsel's conduct are mandatory. It is distressing that counsel in this action were and are perfectly capable of avoiding conduct such as occurred here. Even after court intervention in this action, such conduct by Plaintiff's counsel did not cease.

The causes of counsels' conduct in this action appear to be three fold. First, an erroneous "tradition" exists within some portions of the legal system that the timing of discovery, the content of discovery and disputes about discovery, should, indeed must, be used as a litigation tactic to gain some advantage in litigation.

Second, counsels' understandable desire, on the one hand, not to over prepare a case that may settle, and on the other hand, to be fully prepared for trial, present competing interests which are thought to justify procrastination of case preparation. In this case, that delay extended beyond court ordered deadlines without court approval.

Third, another erroneous "ethic" exists within some portions of the legal system that the lawyer on the other side is an "enemy" to be "fought" and "not trusted" at each and every turn of the road. According to this view, conceding any point to the other side is a sign of weakness and can not but damage the client's case. According to this view, the lawyer's job is to stretch the rules to the limit of their ethical and legal breaking point.

Sanctions in this case are necessary to encourage a process by which the conduct of these lawyers will in fact begin to change. The lawyers in this case are most talented and very intelligent. They know how and why this case was prepared as it was. Counsel should recognize that conduct as occurred here is simply unacceptable.

Accordingly,

IT IS ORDERED that Plaintiff's counsel, Mr. Radacosky, personally and individ-

ually, from his own funds and not those of his law firm or client, shall pay to the Clerk of the Court, the cash sanction of $1,000.00 on or before 5:00 p.m. December 10, 1993.

IT IS FURTHER ORDERED that Defendant's counsel, Mr. Burke, personally and individually, from his own funds and not those of his law firm or client, shall pay to the Clerk of the Court, the cash sanction of $250.00 on or before 5:00 p.m. December 10, 1993.

Appellant contests, on a variety of grounds, the propriety of the sanction imposed against him. We affirm.

Because these findings are fully supported by the record, and justify the sanctions imposed, we deal with appellant's claims summarily:

(1) The demands of due process were met in this case. We do not have a transcript of the July 15 hearing at which memoranda on sanctions were invited. We presume it gave counsel notice of the court's intentions. Defendants' memorandum did. Appellant also had the opportunity to contest the court's decision by way of motion for reconsideration. See generally *Precision Components, Inc. v. Harrison, Harper, Christian & Dichter, P.C.*, 179 Ariz. 552, 880 P.2d 1098 (App.1993); *Abril v. Harris*, 157 Ariz. 78, 754 P.2d 1353 (App.1987).

(2) We reject the argument that because default is an authorized sanction for a discovery violation, urging that sanction for any and every trivial violation is appropriate. Total war is not excusable. Counsel are to work together to accomplish the purposes of the discovery rules. They are not to run to the court claiming foul play whenever a colorable argument can be constructed.

(3) We will not dignify with a response the apparent argument that because all problems were those created by defense counsel, the penalty on appellant is inappropriate.

The basic flaw in appellant's behavior below was to treat the sanction rules as a

---

**5.** The court file in this action is a measured four and three quarters inches thick. Over two thirds of the file relates to discovery and scheduling disputes.

weapon to avoid trial on the merits. Trial courts sit to try cases and not to award merits and demerits for deportment before trial. Nothing required the extensive sanctions fight that appellant initiated below. No real purpose was served. Wasting everyone's time is sanctionable.

Affirmed.

FERNANDEZ and PELANDER, JJ., concur.