923 P.2d 859

Octavio **AGUIRRE** and Sonia Aguirre, husband and wife, parents of Alba Merari Aguirre, deceased, Plaintiffs/Appellees,

v.

**ROBERT FORREST, P.A.,** and Alfred Wu, M.D., Defendants/Appellants.

No. 2 CA–CV 95–0266.

Court of Appeals of Arizona, Division 2, Apartment A.

April 11, 1996.

Review Denied Sept. 17, 1996.

Kerley, Sierra & Broom, P.C., by Alexander L. Sierra, Tucson, for Plaintiffs/Appellees.

Mitten, Goodwin & Raup, by Calvin L. Raup and Jeffery S. Slater, Phoenix, for Defendants/Appellants.

## OPINION

PELANDER, Presiding Judge.

In this medical malpractice action, a jury awarded plaintiffs/appellees $200,000 in damages, finding that defendants/appellants Robert Forrest, P.A., and Alfred Wu, M.D., were negligent and caused the death of plaintiffs' seven-month-old daughter. In their appeal from the resulting judgment, defendants argue that the trial court committed several pretrial errors which, they contend, require reversal and entitle them to summary judgment. We disagree and affirm.

## PROCEDURAL BACKGROUND

Plaintiffs' amended complaint alleged medical negligence by defendants and others caused their daughter's death on May 1, 1992. Plaintiffs served a disclosure statement under Ariz.R.Civ.P. 26.1, 16 A.R.S., in June 1994, identifying Dr. Marcus as their sole standard of care expert. The trial court held a comprehensive pretrial conference in October 1994, in accordance with Rule 1(D), Uniform Medical Malpractice Rules (Medical Rules), 17B A.R.S. The court ordered the parties to disclose all witnesses by December 16. In a supplemental disclosure dated December 13, plaintiffs again identified Dr. Marcus as their sole standard of care expert and disclosed Dr. Posalski as their causation expert.

At Dr. Marcus's deposition on January 3, 1995, he agreed that "Dr. Wu's care under the circumstances met the standard of care...." Although he criticized Forrest's care of the child, Dr. Marcus testified that he was not familiar "with the standard of care for physician's assistants or nurses." Dr. Marcus also indicated, however, that based upon his future review of additional materials not yet furnished him, including Dr. Wu's deposition, his opinions might change.[1] Pursuant to Ariz.R.Civ.P. 30(e), Dr. Marcus elected to read and sign his deposition transcript.

---

1. Defense counsel rejected plaintiff counsel's request to postpone Dr. Marcus's deposition until after he had had an opportunity to review additional materials, including Dr. Wu's deposition.

On January 9, plaintiffs served a supplemental disclosure withdrawing Dr. Marcus as their standard of care expert and replacing him with Dr. Posalski. On January 20, plaintiffs filed a "Motion to Use One Expert Witness Instead of Two" and requested an accelerated hearing and ruling because Dr. Posalski's deposition was scheduled for January 26 in California.

On January 23, defendants moved for summary judgment, contending that plaintiffs had failed to establish any medical negligence through qualified expert testimony. In response to that motion, plaintiffs submitted substantive changes to Dr. Marcus's deposition, including criticism of Dr. Wu's care and a statement as to a physician assistant's standard of care.

The parties appeared in court on January 23 for an unreported hearing on plaintiffs' motion to limit defendants to one causation expert, which the trial court denied. At that time, at plaintiff counsel's request and over defendants' objection, the court heard argument on and granted plaintiffs' "Motion to Use One Expert Witness Instead of Two." On January 26, defendants took a lengthy deposition of Dr. Posalski, who testified that he was familiar with a national minimum standard of care applicable to both Dr. Wu and Forrest. In his opinion, both defendants were negligent in their care and treatment of the child. Thereafter, plaintiffs supplemented their response to defendants' summary judgment motion, asserting Dr. Posalski's opinions as additional grounds for denying it.

At the hearing on their summary judgment motion, defendants essentially urged the court to reconsider and vacate its prior order authorizing plaintiffs to use Dr. Posalski instead of Dr. Marcus on standard of care issues. In response, plaintiffs' counsel explained why Dr. Marcus had made changes to his deposition and said that plaintiffs had decided to use only one expert (Dr. Posalski) in order to "save money." The trial court

denied the motion for summary judgment on March 9, and the next day issued the following minute entry:

> In expansion upon the minute entry order of March 9, 1995, denying the remaining defendants' motion for summary judgment, this court believes the concept of "fairness" presupposes that justiciable issues be tried on their merits and not on technical violations of rules that do not prejudice the other party.

Trial commenced on April 27. During trial, defendants read designated portions of Dr. Marcus's deposition, and plaintiffs read certain changes to it to the jury. The jury also was informed of the parties' stipulation that Dr. Marcus was plaintiffs' witness and that plaintiffs had requested that Dr. Posalski, who testified live at trial, be substituted for Dr. Marcus. The jury returned its verdict for plaintiffs and this appeal followed.

## DISCUSSION

■ Plaintiffs first disclosed Dr. Posalski as their standard of care expert several weeks after the trial court's deadline for disclosure of expert witnesses had passed and a few days after Dr. Marcus's deposition was taken. In their most compelling argument, defendants assert that the trial court erred by not conditioning the "expert witness switch" on a showing of "extraordinary circumstances," as required by Medical Rule 1(D)(3).[2] That rule, as amended in 1992, provides in part:

> Any witnesses not appropriately disclosed shall be precluded from testifying at trial unless there is a showing of extraordinary circumstances.

Defendants also point to the Court Comment to the 1992 amendment to Rule 1, which states:

> The standard of "extraordinary circumstances" set forth in Rule 1(D)(3) is to be interpreted by courts more stringently

---

2. Defendants' other arguments on the "expert witness switch" are unpersuasive. Although the trial court initially ruled on that issue at an accelerated hearing on January 23, defendants were not deprived of the opportunity to adequately oppose it. They did not move for reconsideration of the ruling and did not file any other motions before raising the issue again in the March 6 hearing on their motion for summary judgment. That increased litigation expenses resulted from the court's ruling is hardly unique or surprising, let alone, reversible error. Finally, the ruling did not violate any important policy objectives.

than the good cause exception of Rule 26(e), Arizona Rules of Civil Procedure. Courts should evaluate the diligence of the party seeking to list a witness beyond the time limit, together with the reasons given for the late listing and the listing party's need for the witness' testimony. While the absence of prejudice resulting from the late listing is a factor to be considered, it does not alone constitute grounds for permitting untimely listing.

Relying on Medical Rule 1(D)(3), as explained in the Court Comment, defendants contend that "trial courts do **not** have discretion to exempt late-disclosing parties from showing extraordinary circumstances." Although we agree with that as a general proposition, we disagree with the notion that trial courts have no discretion or flexibility in determining admissibility of an untimely-disclosed expert witness's testimony in a medical malpractice action, unless and until the court expressly finds "extraordinary circumstances" under Medical Rule 1(D)(3).

■ In a similar context, our supreme court has indicated that a trial court need not "automatically exclude witnesses and exhibits where no good cause for their late disclosure has been shown," notwithstanding the mandatory exclusion sanctions of Ariz.R.Civ.P. 26.1(c). *Allstate Ins. Co. v. O'Toole,* 182 Ariz. 284, 285, 896 P.2d 254, 255 (1995). The court recognized that "[t]he mandatory exclusion of evidence in cases where no 'good cause' has been shown for the failure to timely disclose can at times bring about results that are unduly harsh, overly punitive, and inconsistent with the purposes of the new rules." *Id.* at 287, 896 P.2d at 257. We believe the same can be said of the mandatory exclusion sanction of Medical Rule 1(D)(3). In accordance with our supreme court's position on Rule 26.1(c), "we cannot subscribe to the view that [Medical Rule 1(D)(3)] was meant to deprive judges of all discretion to do what may be right and just in particular circumstances." *Id.*

Defendants correctly note, however, that the mandatory exclusion sanction in Medical Rule 1(D)(3) differs from that in Ariz. R.Civ.P. 26(e)(1) and 26.1(c). While the civil procedure rules require a showing of "good cause," Medical Rule 1(D)(3) requires a showing of "extraordinary circumstances" to avoid preclusion of untimely disclosed witnesses. Notwithstanding that distinction and the Court Comment on Medical Rule 1(D)(3), we believe the reasoning and " 'common sense' approach" in *Allstate* apply to that rule as well. 182 Ariz. at 287, 896 P.2d at 257.

■ Bearing in mind that "[w]henever possible, procedural rules should be interpreted to maximize the likelihood of a decision on the merits," *id.,* and that "[e]ach situation must necessarily be evaluated on its own facts," *id.* at 288, 896 P.2d at 258, we conclude that the trial court did not err in permitting plaintiffs to use Dr. Posalski as their standard of care expert. The circumstances, viewed in their totality, support that conclusion: before changing certain answers based on review of additional materials which he deemed relevant to his opinions, Dr. Marcus unexpectedly failed to fully support plaintiffs' liability claims in his deposition; plaintiffs diligently sought to replace Dr. Marcus with Dr. Posalski by disclosing that change within six days of Marcus's deposition; at the time of the substitution, plaintiffs were in need of expert testimony on standard of care issues; plaintiffs had timely disclosed Dr. Posalski as an expert witness, albeit only on the causation issue; his deposition had not yet been taken when the trial court authorized the substitution; the substitution occurred more than three months before trial; and defendants did not establish any real prejudice, other than contending the "expert witness switch" deprived them of summary judgment to which they otherwise would have been entitled.[3]

■ In addition, as plaintiffs point out, "the record is silent as to the reasons why the trial court granted [their] request to use

---

3. While we do not need to address this latter contention, we do not necessarily agree with it; nor is there any indication that the trial court would have granted summary judgment for de-

fendants had the "expert witness switch" been disallowed, especially since Dr. Marcus later corrected his deposition testimony.

Dr. Posalski as their sole expert witness," except for the court's expressed belief that "the concept of 'fairness' presupposes that justiciable issues be tried on their merits and not on technical violations of rules that do not prejudice the other party." In the absence of a complete record on this issue, we assume the trial court evaluated all relevant factors and made any necessary findings to support its ruling. *See Boltz & Odegaard v. Hohn,* 148 Ariz. 361, 366, 714 P.2d 854, 859 (App.1985); *Schuldes v. National Surety Corp.,* 27 Ariz.App. 611, 618, 557 P.2d 543, 550 (1976); *Frazier v. O.S. Stapley Co.,* 9 Ariz.App. 514, 517–18, 454 P.2d 184, 187–88 (1969).

It is not our intent to denigrate or minimize the requirements of the Medical Rules or the importance of parties complying with them. Our supreme court's observations on a trial court's role vis-a-vis the disclosure requirements of Rule 26.1 are applicable to the Medical Rules as well. That is to say, trial courts are encouraged "to take firm, active roles in the application and enforcement of these procedural rules that were specifically designed to curb discovery abuse, excessive cost, and delay," and trial courts will be supported in their reasonable efforts to do so. *Allstate,* 182 Ariz. at 287, 896 P.2d at 257. In cases like this, it is the better and preferred practice for trial courts to not only require the offending party to show "extraordinary circumstances" to justify use of an untimely disclosed expert witness, but also to make a specific finding, on the record, on that topic. Witness disclosure issues, however, must be decided on a case-by-case basis. In this case the trial court did not abuse its discretion or violate Medical Rule 1(D)(3) by permitting plaintiffs to use Dr. Posalski as their sole expert witness.

Defendants also contend that the trial court erred in allowing plaintiffs to oppose defendants' motion for summary judgment with contradictory, unsworn changes to Dr. Marcus's deposition testimony and that his original testimony compelled granting summary judgment. We do not address the issue in view of our holding that the trial court did not err in permitting plaintiffs to use Dr. Posalski as their standard of care expert. The trial court could have properly considered Dr. Posalski's opinions of fault against both defendants in denying summary judgment, and his testimony clearly created genuine issues of material fact. Although the court did not specify its reasons for denying defendants' motion, we will affirm if its ruling was correct on any ground. *Glaze v. Marcus,* 151 Ariz. 538, 540, 729 P.2d 342, 344 (App.1986). Viewing the evidence and all reasonable inferences in a light most favorable to plaintiffs, the trial court did not err in denying defendants' motion for summary judgment.

Affirmed.

LIVERMORE and HATHAWAY, JJ., concur.