937 P.2d 347

Jimmie D. PERGUSON and Kathleen Kenyon, surviving parents of Danette Perguson, deceased, Plaintiffs/Appellants,

v.

Robert H. TAMIS, M.D., and Beverlee Tamis, husband and wife; Robert H. Tamis, M.D., P.C., an Arizona corporation; Simat, Inc., an Arizona corporation, all d/b/a Abortion Services of Phoenix; Steve Nunn and Terry Nunn, husband and wife, Defendants/Appellees.

No. 2 CA–CV 96–0156.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 24, 1996.

Review Denied May 20, 1997.

Plattner Verderame, P.C. by Frank Verderame, Phoenix, for Plaintiffs/Appellants.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks and Kimberly A. Kent, Phoenix, for Defendants/Appellees Nunn.

Weyl, Guyer, MacBan & Olson, P.A. by Barry A. MacBan and Andrew E. Rosenzweig, Phoenix, for Defendants/Appellees Tamis, Arizona Reproductive Medicine and Gynecology, Ltd., successor-in-interest to Robert H. Tamis, M.D., P.C., and SIMAT, Inc.

## OPINION

PELANDER, Presiding Judge.

In this medical malpractice case, plaintiffs, surviving parents of decedent Danette Perguson, appeal from the trial court's entry of summary judgment for defendants. Although this appeal presents close issues about expert witness disclosures and application of the "one expert per issue" presumption of Rule 1(D)(4), Uniform Rules of Practice for Medical Malpractice Cases (Medical Rules), 17B A.R.S., we reverse for the reasons set forth below.

### FACTS AND PROCEDURAL HISTORY

While undergoing an elective abortion procedure by defendant Robert Tamis, M.D., in February 1992, decedent sustained a large pulmonary embolus and died several hours later. Her parents filed this action in February 1994, claiming that medical negligence by Dr. Tamis and his physician assistant (PA), defendant Steve Nunn, proximately caused her death. In their initial disclosure statement and interrogatory answers served in October 1994, plaintiffs listed as an expert witness MacArthur Hill, M.D., an obstetrician/ gynecologist (OB/Gyn) in Colorado, who purportedly would testify that both defendants fell below the standard of care and caused the death of Danette Perguson. The interrogatory answer listed several opinions Dr. Hill was expected to render against Dr. Tamis and Mr. Nunn.

At the comprehensive pretrial conference (CPC) in December 1994, the trial court set a firm jury trial date for September 18, 1995. The court also accepted the parties' joint CPC memorandum, which proposed simultaneous disclosure of all standard of care and causation expert witnesses in February 1995. In their first supplemental disclosure statement served in February, plaintiffs again listed Dr. Hill as an expert witness, indicating his testimony would include the following:

> [T]hat Dr. Tamis knew or should have known that Danette presented a high risk and that his actions on the day the procedure were [sic] done were the direct and proximate cause of her death. Dr. Hill will testify that the abortion performed by Dr. Tamis caused her death.

In that supplemental disclosure, plaintiffs also listed as an expert witness Thomas Murphy Goodwin, M.D., (OB/Gyn) of California, stating as follows:

> Dr. Goodwin has reviewed the medical records and the deposition transcript of Robert Tamis. It is anticipated that he will testify as to the following areas:
>
> 1. Nature of the pregnancy of Danette Perguson.
>
> 2. Relationship of her condition of Pyruvate Kinase Deficiency to that pregnancy condition, as well as the high platelet count.
>
> 3. That such condition created a unique circumstance for Dr. Tamis' clinic and the management of said patient by Dr. Tamis and his staff.
>
> 4. That given her condition at the time she presented, she was not a candidate for abortion, that she should have been advised by Dr. Tamis of her condition.
>
> 5. That she should have been informed of the probable increased risks from the procedure, including death and that if she desired to continue the procedure, it should have been performed in a hospital where more support would have been available, intermittent compression of the lower extremities could have been employed to reduce the risk of thrombus formation; peri-operative use of aspirin or other agents to decrease platelet function should have been at least discussed.

Dr. Goodwin also is an expert in maternal-fetal medicine and can comment on the risks of continuing a pregnancy vis a vis termination. Dr. Goodwin opines that but for the abortion performed by Defendants, Danette Perguson would be alive today.

Dr. Goodwin will supplement his opinion as additional discovery is provided to him for review.

Defense counsel took Dr. Hill's deposition in Colorado on April 7, 1995, thoroughly questioning him on all liability issues without objection, limitation or clarification of his role by plaintiffs' counsel. Although Dr. Hill opined that both Dr. Tamis and Mr. Nunn were negligent, he was unable to say to a reasonable degree of medical probability that anything defendants did or did not do caused the decedent's death.

On May 25, defendants moved to exclude any expert testimony by Dr. Goodwin under Medical Rule 1(D)(4) on the grounds that "his anticipated testimony is both duplicative and cumulative in violation of the applicable medical malpractice rules." In response, plaintiffs asserted for the first time that only Dr. Goodwin, not Dr. Hill, would address all causation issues as to both defendants and standard of care issues as to Dr. Tamis. After oral argument, the trial court granted defendants' motion, finding that Dr. Goodwin's testimony "would be duplicative and/or cumulative" to Dr. Hill's. On the same day as that ruling, defendants immediately moved for summary judgment, contending that plaintiffs had failed to establish causation. Defendant Nunn further contended that Dr. Hill was not qualified to render opinions against him.

In response to defendants' summary judgment motions, plaintiffs acknowledged that Dr. Hill's testimony was inadequate on the causation issue, but contended that element could and would be established through Dr. Goodwin. Plaintiffs also urged the court to reconsider its prior ruling excluding Dr. Goodwin's testimony, asserting that it was not duplicative or cumulative to Dr. Hill's and attaching an affidavit Dr. Goodwin had executed on August 9, 1995. In his affidavit, Dr. Goodwin stated in some detail how defendants were negligent and caused decedent's death.

The trial court denied plaintiffs' motion to reconsider the exclusion of Dr. Goodwin's testimony and granted summary judgment for defendants, concluding that plaintiffs "lack[ed] sufficient expert testimony to demonstrate the element of causation and are unable to make a *prima facie* case" against any of the defendants. The court also found plaintiffs lacked sufficient expert testimony to establish the standard of care applicable to defendant Nunn. This appeal followed.

## DISCUSSION

■ "The trial court has broad discretion in ruling on discovery and disclosure matters," and we will not disturb its ruling "absent an abuse of discretion." *Soto v. Brinkerhoff*, 183 Ariz. 333, 335, 903 P.2d 641, 643 (App.1995). "That discretion is abused if the record fails to establish substantial evidence to support the ruling," *id.*, or if the trial court commits an error of law in reaching its discretionary conclusion. *Grant v. Arizona Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982). Interpretation of the meaning and effect of a court rule is a question of law subject to *de novo* review. *Cf. Jones v. Buchanan*, 177 Ariz. 410, 868 P.2d 993 (App.1993).

■ It is undisputed that plaintiffs timely and properly disclosed Dr. Goodwin as an expert witness in accordance with the trial court's CPC order and the disclosure requirements of Rule 26.1, Ariz. R. Civ. P., 16 A.R.S. Thus, defendants acknowledge that their motion to exclude and the trial court's ruling thereon were "not based on inadequate or untimely disclosure," but rather only on Medical Rule 1(D)(4). That rule, as amended in 1992, requires the court and the parties at the time of the CPC to "[l]imit the number of experts." The rule further provides that "[e]ach party shall presumptively be entitled to only one standard-of-care expert[, and e]ach side shall presumptively be entitled to only one expert on any other issue." The rule, however, says nothing about the listing or disclosure of experts.

Defendants contend that Medical Rule 1(D)(4) "does not permit the listing of duplicative and/or cumulative experts," and "litigants are not allowed to disclose multiple experts and manipulate those experts' roles and opinions depending on who gives a better performance at their deposition." Defendants' position essentially is that once they had deposed Dr. Hill and obtained his unqualified opinions on all negligence and causation issues, in accordance with plaintiffs' prior disclosures and without plaintiffs' objection to or clarification of Dr. Hill's role, plaintiffs were then "locked in" to using only Dr. Hill. That conclusion, however, is neither mandated by Medical Rule 1(D)(4) nor logically reconcilable with this court's recent decision in *Aguirre v. Forrest*, 186 Ariz. 393, 923 P.2d 859 (App.1996).

In *Aguirre*, this court held that the trial court did not abuse its discretion or violate Medical Rule 1(D)(3) by authorizing plaintiffs, approximately three months before trial but after the expert disclosure deadline, to substitute their timely-disclosed causation expert for their standard of care expert, permitting the former to testify on both issues. As in this case, plaintiffs in *Aguirre* sought to make the "expert witness switch" after one of their disclosed experts had been deposed. Relying on our supreme court's reasoning and " 'common sense approach' " applied to the civil procedure disclosure rules, *Allstate Insurance Co. v. O'Toole*, 182 Ariz. 284, 287, 896 P.2d 254, 257 (1995), we concluded that Medical Rule 1(D)(3) was not " 'meant to deprive judges of all discretion to do what may be right and just in particular circumstances.' " *Aguirre*, 186 Ariz. at 396, 923 P.2d at 862, *quoting Allstate*, 182 Ariz. at 287, 896 P.2d at 257.

As defendants correctly note, this case is distinguishable from *Aguirre* in several respects. It is true, for example, that plaintiffs' counsel's conduct relating to expert disclosures in this case was ambiguous and arguably misleading. The timing, manner and lack of diligence of plaintiffs' ultimately differentiating the experts' roles were far from ideal. In addition, the "expert witness switch" permitted in *Aguirre* totally eliminated one of plaintiffs' experts, whereas

plaintiffs' attempted "switch" in this case sought to clarify or reallocate the roles their two experts would play. Such factual and procedural distinctions, however, are relatively insignificant. As in *Aguirre*, plaintiffs attempted their "expert witness switch" approximately three months before trial and before Dr. Goodwin had been deposed, albeit two months after Dr. Hill's deposition. The major difference, of course, is that the trial court in *Aguirre* permitted the "expert witness switch," whereas the trial court here precluded it by excluding Dr. Goodwin altogether, thereby effectively assuring summary judgment for defendants.

The Medical Rules, as amended in 1992, have similar goals and purposes as the 1992 amendments to our Rules of Civil Procedure. *See* Medical Rules, Preamble, 17B A.R.S.; Ariz. R. Civ. P. 26.1, Court Comment (1991 Promulgation). Indeed, with certain specified exceptions, the Rules of Civil Procedure, including Rule 26.1, apply to medical malpractice cases to the extent they do not conflict and are not inconsistent with the Medical Rules. *See* Medical Rules, 17B A.R.S., Preface to 1992 Amendments. Accordingly, cases interpreting the witness disclosure requirements of our civil procedure rules are instructive in construing parallel provisions in the Medical Rules. In *Allstate*, our supreme court recognized that "[t]he mandatory exclusion of evidence in cases where no 'good cause' has been shown for the failure to timely disclose can at times bring about results that are unduly harsh, overly punitive, and inconsistent with the purposes of the new rules." 182 Ariz. at 287, 896 P.2d at 257. The trial court's ruling totally excluding Dr. Goodwin as a witness, in our view, produced such a result here.

■ Witness disclosure issues must be decided on a case by case basis. *Aguirre*, 186 Ariz. at 395, 923 P.2d at 861. As the court stated in *Allstate*:

The reason for a failure to properly disclose evidence is only one factor in the determination of good cause to grant "leave of court." Others may include, but are not necessarily limited to: the willfulness or inadvertence of a party's (or attorney's) conduct, prejudice to either side that

may result from excluding or allowing the evidence, the opposing party's (or attorney's) action or inaction in attempting to resolve the dispute short of exclusion, and the overall diligence with which a case has been prosecuted or defended.

182 Ariz. at 288, 896 P.2d at 258. Evaluating those factors in accordance with the " 'common sense' approach" espoused in *Allstate* and *Bryan v. Riddel*, 178 Ariz. 472, 875 P.2d 131 (1994), and mindful that "procedural rules should be interpreted to maximize the likelihood of a decision on the merits," *Allstate*, 182 Ariz. at 287, 896 P.2d at 257, we conclude that the trial court's total exclusion of Dr. Goodwin's testimony was too harsh a sanction for any alleged infraction of the presumptive limitations in Medical Rule 1(D)(4) and constituted an abuse of discretion. That ruling essentially terminated the litigation by depriving plaintiffs of an opportunity to establish a *prima facie* case.

Despite plaintiffs' less than diligent behavior relating to experts, the facts surrounding their disclosure of Dr. Goodwin do not smack of "sandbagging," concealment, deception or " 'litigation by ambush.' " *Allstate*, 182 Ariz. at 287, 896 P.2d at 257. In addition, there is no indication of willfulness on the part of plaintiffs' counsel. Although defendants complain that plaintiffs filed Dr. Goodwin's detailed affidavit just forty days before trial when opposing defendants' summary judgment motions, plaintiffs' disclosure of Dr. Goodwin in February 1995 substantially complied with the requirements of Rule 26.1, and defendants do not contend otherwise.[1]

Defendants claim to be tactically disadvantaged and prejudiced by plaintiffs' redesignation of experts because defendants already have "shown their hands" by having thoroughly deposed Dr. Hill and by plaintiffs having already deposed the jointly-retained defense expert. Defendants had the opportunity, however, to depose Dr. Goodwin in May 1995, before plaintiffs deposed the defense expert, but chose not to. Although reducing litigation costs clearly is an important goal in all cases, defendants could and

should have sought clarification (with court intervention, if necessary) of the disclosed roles of plaintiffs' experts vis-à-vis the presumptive limitations of Medical Rule 1(D)(4) before taking Dr. Hill's deposition, if indeed they were primarily concerned with the expense of taking two experts' depositions. Moreover, the prejudice to plaintiffs in totally excluding Dr. Goodwin outweighed the prejudice to defendants in having to take a second expert's deposition or, if necessary, having to request a short trial continuance. Indeed, defendants' contention in *Aguirre* that the "expert witness switch" deprived them of summary judgment was held not to be sufficiently prejudicial to preclude the switch.

Finally, if plaintiffs' disclosure was considered deficient in any respect, including its alleged violation of Medical Rule 1(D)(4), defense counsel had sufficient time and opportunity to bring that to the attention of plaintiffs' counsel or the court well before trial and before any arguable prejudice arose. Defendants did not seek to restrict plaintiffs' experts until after taking Dr. Hill's deposition, however, and then sought to force and limit plaintiffs' choice to the expert whom defendants had deposed. Other than insisting that plaintiffs delete Dr. Goodwin as a witness, there was no apparent attempt by defense counsel "to resolve the dispute short of exclusion." *Allstate*, 182 Ariz. at 288, 896 P.2d at 258. Our supreme court has expressly recognized the obligation of all attorneys to informally "work together to bring about decisions on the merits of cases, rather than try to trip each other with technicalities." *Id.* Just as the exclusionary provisions of Rule 26.1 are not to be used as "a weapon of destruction" in an "arsenal of technicalities," *id.* at 287, 896 P.2d at 257, neither is the "one expert per issue" presumption in Medical Rule 1(D)(4). *See also In re Radacosky*, 183 Ariz. 531, 534, 905 P.2d 540, 543 (App.1995) ("Counsel are to work together to accomplish the purposes of the discovery rules. They are not to run to the court claiming foul play

---

1. Rule 26.1 does not require a party to spell out, word for word, his or her entire case. *Bryan*,

178 Ariz. at 476 n. 5, 875 P.2d at 135 n. 5.

**430**

whenever a colorable argument can be constructed.").

We do not suggest that there are no limits on the number of experts parties may disclose, or that parties must first complete discovery before they or the trial court may take steps to limit the number or type of experts. To the contrary, Medical Rule 1(D)(4) suggests just the opposite. Once a party has agreed or is ordered to limit his or her timely-disclosed but overlapping experts, however, that party, not adverse parties, should get to choose which expert(s) will or will not be used at trial.

Because the trial court erred in excluding Dr. Goodwin as a witness, summary judgment for defendants on causation grounds was inappropriate. Dr. Goodwin's affidavit clearly raised genuine issues of material fact bearing on causation as to both defendants. The trial court granted summary judgment for defendant Nunn, however, on the alternative ground that Dr. Hill was unqualified to render opinions on the standard of care of PAs in Arizona. We disagree.

■ We view the evidence and all reasonable inferences in the light most favorable to the party against whom summary judgment was entered. Dr. Hill is a licensed, board-certified OB/Gyn who has performed abortions and dilation and curettage procedures. Although he criticized Mr. Nunn in several areas, Dr. Hill acknowledged that he was not familiar with the law or standard of care applicable to PAs or their scope of practice in Arizona. In addition, Dr. Hill had never worked with a PA before. Nonetheless, Dr. Hill believed that since he was qualified to supervise Mr. Nunn, he also was qualified to render standard of care opinions against him.[2]

■ An expert witness may be qualified to give an opinion in a medical malpractice case by reason of his or her actual experience, study, education, observation or association. *Taylor v. DiRico,* 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980); *McGuire v. DeFrancesco,* 168 Ariz. 88, 92, 811 P.2d 340, 344 (App.1990); *Gaston v. Hunter,* 121 Ariz. 33, 51, 588 P.2d

326, 344 (App.1978). The expert need not be of the same medical specialty as the malpractice defendant. *Fridena v. Evans,* 127 Ariz. 516, 520, 622 P.2d 463, 467 (1980); *Taylor,* 124 Ariz. at 518, 606 P.2d at 8; *Barrett v. Samaritan Health Serv.,* 153 Ariz. 138, 141, 735 P.2d 460, 463 (App.1987); *Gaston,* 121 Ariz. at 53, 588 P.2d at 346. "The test in every case is whether the witness possesses special knowledge about the subject at issue which will assist the jury in making its decisions." *Gaston,* 121 Ariz. at 51, 588 P.2d at 344.

Dr. Hill's criticism of defendant Nunn focused solely on the latter's acts or omissions relating to the abortion procedure, including his alleged failure to obtain an adequate history, to communicate the history to Dr. Tamis before inserting the laminaria and to properly dilate the cervix. Dr. Hill clearly was experienced in and qualified to address those subjects, even though he had not yet reviewed the Arizona statutes relating to PAs, A.R.S. §§ 32–2501 to 32–2554, and even though a PA is not necessarily held to the same standards as an OB/Gyn. We agree with plaintiffs that Dr. Hill possessed "the years of experience, skill, knowledge, education and training in the field of obstetrics, gynecology, and specifically, the performance of abortions, to comment on the actions of a physician's assistant." Any deficiencies in his knowledge and background relating specifically to PAs "may affect the weight. to be given the expert's testimony, but does not altogether preclude its admissibility." *McGuire,* 168 Ariz. at 92, 811 P.2d at 344, *citing Smith v. John C. Lincoln Hosp.,* 118 Ariz. 549, 551, 578 P.2d 630, 632 (App.1978).

We reverse the trial court's judgments for defendants and remand the case for further proceedings consistent with this decision.

LIVERMORE and FLOREZ, JJ., concur.

---

**2.** Similarly, defendants' expert deemed himself qualified to render opinions on the standard of

care of PAs even though he had never employed or supervised them.